BAYWOOD CORPORATION, et al.

v.

MAINE BONDING & CASUALTY CO., et al.

Supreme Judicial Court of Maine.

Argued April 28, 1993.

Decided July 22, 1993.

Edward W. MacColl (orally), Thompson, McNaboe, Ashley & Bull, Portland, for plaintiff.

Martica S. Douglas (orally), Douglas, Whiting, Quinn & Denham, Portland, Brett D. Baber (orally), Rudman & Winchell, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and DANA, JJ.

CLIFFORD, Justice.

Maine Bonding and Casualty Company and American Fidelity Company (the insurers) appeal from a summary judgment entered in the Superior Court (York County, *Cole, J.*) in favor of the plaintiffs, Baywood Corporation, R.E. Marier, Inc., and Robert E. Marier, Jr. (the developers), that the insurers are obligated to defend the developers in a pending civil action brought by the owners of a condominium project developed, built, and sold by the developers. Because the complaint does not allege damages within the provisions of the comprehensive general liability policy, we vacate the judgment.

It is alleged in the underlying complaint that the developers marketed and sold condominium units in Kennebunk beginning in 1982 and represented to potential owners that the development would be serviced by public water and sewer facilities and that its internal water and sewer system would be accepted by the town. In September 1987, the condominium association accepted control of the condominium from the developers. Sometime thereafter, the Town of Kennebunk refused to accept the development's sewer system due to its inadequate design. The association brought suit against Baywood, the developer, R.E. Marier, Inc., the marketing agent, and Robert E. Marier, Jr., as an insider of Baywood Corporation and transferee of its assets via a liquidating trust, claiming fraudulent misrepresentation, breach of warranty, breach of contract, negligence, negligent misrepresentation, and a violation of the uniform fraudulent transfer act.

The developers referred the complaint to their insurers. Maine Bonding had insured the developers pursuant to a comprehensive general liability policy in effect from June 26, 1981 to June 26, 1984.[1] Coverage for the developers thereafter was provided by American Fidelity under a similar general comprehensive liability policy. Both insurers refused to defend or indemnify the developers in the underlying action. The developers filed a complaint for declaratory relief and, following a hearing on cross-motions for a summary judgment, the court concluded that the insurers have a duty to defend the developers in the underlying action. This appeal by the insurers followed.

An insurer's duty to defend its insured presents a question of law, *L. Ray Packing Co. v. Commercial Union Ins. Co.*, 469 A.2d 832, 834 (Me.1983), that the court determines by comparing the allegations in the underlying complaint with the provisions of the insurance policy. *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 384 (Me.1989). The insured is entitled to a defense "if there exists any legal or factual basis which could be developed at trial that would obligate the insurers to pay under the policy." *L. Ray Packing*, 469 A.2d at 833. The duty to defend, while it is considerably broader than the duty to indemnify, does not encompass alleged hazards not within the scope of the policy. We agree

---

1. Contrary to Maine Bonding's contention, the losses claimed by the condominium owners do not postdate the effective dates of its policy. The harm claimed by the unit owners arose as of the date they purchased their units in reliance on the alleged faulty design of the sewer system, even though the town had not yet rejected the system. Accordingly, Maine Bonding's policy covers part of the time period during which the injury is claimed. *Cf. Kraul v. Maine Bonding & Cas. Co.*, 559 A.2d 338, 338 (Me. 1989).

with the insurers' contention that, because the complaint does not allege actual damage to property but rather seeks damages for replacing defective workmanship, which is a business risk specifically excluded from the policy, they have no obligation to defend the underlying action.

The standard comprehensive general liability policy, in exclusions (m), (n), and (o),[2] specifically excludes coverage for business risks based on the contractor's warranty for its work. *See Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.,* 584 A.2d 608, 610 (Me.1990); *Peerless Ins. Co.,* 564 A.2d at 387. What is insured, therefore, under the standard comprehensive general liability policy is property damage resulting from an occurrence of harm occasioned by negligent workmanship. What is not insured is the repair or replacement of the faulty work. *Peerless Ins. Co.,* 564 A.2d at 386 (general comprehensive liability policy affords coverage when faulty work causes an accident resulting in physical damage to others, but not for contractor's product or complete work, which is a business expense). Here, the complaint refers generally to property damage but alleges no physical damage to the units or to the sewer system itself. Only the devaluation of the units because of the town's refusal to accept the sewer system and the added cost to the association to maintain and service a private system or to upgrade the system to meet the town's specifications for public acceptance are specified as damages in the complaint. It is not damages for injury to property caused by the faulty design of the system that the association seeks, but rather the cost to replace or upgrade the system. Thus, the complaint does not allege property damage within the policy's coverage. *See id.* at 387 (replacement of defective and damaged building frame was not within coverage of comprehensive general liability policy).

Nor does the broad form endorsement modify exclusion (o) to provide coverage otherwise excluded by the policy.[3] The deletion in the endorsement of the words "work performed on behalf of the insured," contained in exclusion (o), acknowledges the incorporation of a subcontractor's work in the finished product; it does not create coverage for faulty work by a subcontractor.

The deletion of the phrase relating to subcontractors in the exclusion in the completed operations policy makes sense because the insured contractor has presumably accepted the subcontractor's work as his own (at least so far as its potential tort liability is concerned), and has turned the completed work over to the owner by the time such a completed operations policy is operative.

*Tucker Constr. Co. v. Michigan Mut. Ins. Co.,* 423 So.2d 525, 528 (Fla.App.1982). Thus, the broad form endorsement does not

---

**2.** Exclusion (m) provides that the insurance does not apply

to the loss of use of tangible property which has not been physically injured or destroyed resulting from ...

....

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products have been put to use by any persons or organization other than an insured;

Exclusion (n) provides that the insurance does not apply

to property damage to the named insured's products arising out of such products or any part of such products;

Exclusion (o) provides that the insurance does not apply

to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

**3.** The broad form endorsement modifies exclusion (o) to provide that the insurance does not apply

with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including completed operations," to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

**1032**

alter the terms and conditions of the policy, but merely extends the existing coverage to insure against property damage arising from an occurrence after the completion of the project. It does not provide new coverage for the business risk of the defective workmanship of the insured or its subcontractors. *See Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 236–37 (Minn.1986).

Because we find that the insurers have no duty to defend under the terms of the comprehensive general liability policy, we need not address the specific application of the policy to R.E. Marier, Inc. or to Robert E. Marier, Jr.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment for the insurers.

All concurring.