## N E PROPERTIES, INC.

### v.

## CHICAGO TITLE INSURANCE CO.

Supreme Judicial Court of Maine.

Argued June 5, 1995.

Decided July 7, 1995.

James D. Poliquin (orally), Norman, Hanson & DeTroy, Portland, for plaintiff.

Joel C. Martin (orally), Petruccelli & Martin, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and RUDMAN, JJ.

WATHEN, Chief Justice.

Plaintiff N E Properties, Inc. appeals from an order of the Superior Court (Cumberland County, *Saufley, J.*) granting a summary judgment in favor of defendant Chicago Title Insurance Company (Chicago Title). N E Properties' claims result from the alleged failure of Chicago Title to fulfill its duty to defend and indemnify pursuant to a title insurance policy on property used as a country club. Plaintiff contends that Chicago Title had a duty to defend actions brought by residents of a development who purportedly held lifetime membership in the Country Club. Plaintiff argues that a summary judgment was improperly granted on its breach of contract claim and on its allegations of unfair claims practice and negligence. Finding no error, we affirm the judgment.

The facts in this case are complex but undisputed. N E Properties is the former owner and developer of Highlands Point Subdivision. In conjunction with that development, N E Properties created the Bridgton

Highlands Country Club (the Country Club), a golf and tennis club. When ownership of the Highlands Point lots was transferred to individual purchasers, the deeds from N E Properties provided that the conveyances included "the appurtenances, benefits and entitlements set forth in a Declaration of Protective Covenants (Declaration) by N E Properties dated January 5, 1983, and recorded in the Cumberland County Registry of Deeds." The Declaration included covenants that were to run with the land and purported to provide the owners of each lot with a lifetime membership in the Country Club. At the time the Declaration was recorded, N E Properties owned both Highlands Point Subdivision and the Country Club.

After the conveyances to individual lot owners, N E Properties granted a mortgage on the Country Club to Casco Northern Bank NA (Casco), as security for a $3,000,000.00 loan. As part of the mortgage transaction, N E Properties purchased an owner's title insurance policy from Chicago Title. The policy did not reference the Declaration. N E Properties subsequently experienced financial difficulties that resulted in Casco foreclosing on the Country Club property. Prior to the foreclosure sale, Casco sent a letter to the lot owners stating that the Country Club property would be "sold free and clear of any interest the [owners] may have in the mortgaged premises, including, without limitation, any rights the .. lot owners may have to membership in the golf course on the mortgaged real estate."

Shortly after that notification, some of the owners filed a complaint in the Superior Court against Casco and N E Properties, seeking a declaratory judgment that the membership rights set out in the Declaration ran with the land, that Casco could not extinguish those rights through a foreclosure sale, and that any purchaser of the Country Club would take subject to those rights. Ultimately, the parties reached an agreement whereby the property was sold at auction subject to whatever rights the lot owners might have.

One full year after the original complaint was filed, the lot owners amended their complaint to add a count against N E Properties for damages in the event that it was found that the golf club membership rights did not run with the land. N E Properties then notified Chicago Title of the amended claim against it, and Chicago Title requested all documents relating to that action. N E Properties responded by offering to provide the documents as soon as it received assurance that a particular attorney would not be assigned to represent N E Properties. No such assurance was ever offered and N E Properties provided no further documents to Chicago Title. Six months later, N E Properties obtained a release of liability from the lot owners in return for a payment in cash and property. The declaratory judgment action against Casco's successor remains unresolved. Two days after the settlement, Chicago Title informed N E Properties that it would not defend the claim.

N E Properties brought the present action against Chicago Title asserting breach of contract, unfair claims practice, and negligence in drafting the legal description of the Country Club property. On cross motions for a summary judgment, the Superior Court entered a judgment in favor of Chicago Title. N E Properties appeals.

■■■ We review a trial court's order granting a summary judgment for error of law. *Estate of Althenn v. Althenn*, 609 A.2d 711, 714 (Me.1992). The duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy. *Baywood Corp. v. Maine Bonding and Casualty*, 628 A.2d 1029 (Me.1993). The "insured is entitled to a defense 'if there exists any legal or factual basis which could be developed at trial which would obligate the insurers to pay under the policy.'" *Id.* at 1030 (citation omitted). An insurer's duty to defend is a question of law. *L. Ray Packing Co. v. Commercial Union Ins. Co.*, 469 A.2d 832, 834 (Me.1983).

■■■ Having examined the title policy, we find no possibility that the insurer would be obligated to indemnify N E Properties. As the Superior Court correctly reasoned, there are two possible outcomes to the lot owners' action. The court could determine that the membership rights are estates in land and

encumber the Country Club, or it could determine that the membership rights are not estates in land and do not encumber the Country Club. In neither case would an obligation to indemnify arise.

In the first alternative, coverage would be denied under the exclusion for encumbrances created by the insured. The policy specifically excludes encumbrances "created, suffered, assumed or agreed to by the insured claimant." In the second alternative, the lot owners would presumably pursue their breach of contract claim against N E Properties for failure to provide the estate bargained for in their sales contracts. Any damages awarded on that claim would not be awarded "by reason ... of an encumbrance" on the title, but rather because N E Properties had failed to create an encumbrance. In such a case, the golf course property would have been determined to be *exactly as insured*—without any encumbrances—and thus there would be no payment under the policy. The Superior Court correctly found no duty to defend, and thus no breach of contract.

■ N E Properties also asserts that the court erred in granting a summary judgment on its allegation of unfair claims practice pursuant to 24–A M.R.S.A. § 2436–A (1990).[1] The insurance policy, in this case, required that the insured "give the Company all reasonable aid in any such action or proceeding, in effecting settlement, securing evidence, obtaining witnesses, or prosecuting or defending such action." It is undisputed that N E Properties refused to forward the requested documents until Chicago Title agreed not to retain a particular attorney. The additional information was never provided. No exception for such circumstances is found within the clear language of § 2436–A(1). As a matter of law, Chicago Title's response, approximately 6 months after formal notification, and before any response to its request for further information, did not violate the unfair claims practice provision. *See Marquis v. Farm Family Mutual Ins. Co.*, 628 A.2d 644, 651 (Me.1993).

■ N E Properties finally asserts that the court erred in granting a summary judgment to defendant Chicago Title on its independent negligence claim. The Superior Court correctly ruled that plaintiff failed to establish that Chicago Title owed it a duty to exercise due care in generating the description of the mortgaged property. In the absence of an express contract or preliminary title report, courts have uniformly declined to hold a title insurance company liable for a negligent title search. *See Focus Inv. Assocs. v. American Title Ins. Co.*, 992 F.2d 1231 (1st Cir.1993). In trying to recover its loss under negligence principles, an insured who has no express agreement or preliminary title report, is seeking to expand its relationship beyond the bounds of the contract it has with the title insurer. N E Properties makes no assertion that either an express agreement or preliminary title report exists and, therefore, has failed to establish the threshold requirement of a negligence action—duty.

The entry is:

Judgment affirmed.

All concurring.

■

---

1. 24–A M.R.S.A. § 2436–A provides in pertinent part:

**1. Civil Actions.** any person injured by any of the following actions taken by its own insurer may bring a civil action and recover damages, together with costs and disbursements, reasonable attorneys fees and interest on damages at the rate of 1½% per month: ...

**B.** Failing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under a policy; ...

**D.** Failing to affirm coverage, reserving any appropriate defenses, or deny coverage within a reasonable time after completed proof of loss forms have been received by the insurer.