USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1903

 UNITED BANK,

 Plaintiff, Appellant,

 v.

 CHICAGO TITLE INSURANCE COMPANY,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge]

 Before

 Boudin, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 
 

 Richard Silver with whom Russell, Lingley & Silver was on
brief for appellant.
 Joel C. Martin with whom Petruccelli & Martin was on brief for
appellee.

February 12, 1999

 
 

 BOUDIN, Circuit Judge. In 1992, United Bank of Bangor,
Maine, loaned Northern Products, Inc. ("Northern") $1.15 million. 
The loan was guaranteed by Falcon, Inc., a company under the same
ownership as Northern, and secured by a mortgage on Falcon's
sporting lodge and 900-acre wilderness property in Maine (the
"Spencer Lake property"). The Spencer Lake property includes two
miles of lakefront, but its only road access runs from Route 201
for seventeen miles over a road on privately owned land.
 Northern, the previous owner of the Spencer Lake property
before its transfer to Falcon, held a deeded right of way for
eleven of the seventeen miles. Ernie Caliendo, owner of both
Northern and Falcon, had obtained a revocable $100-per-year license
granting a right of access over the remaining six miles. That
license, which had been obtained with the assistance of attorney
Thomas Needham, expired in 1990 and was not renewed.
 During negotiations over the terms of the l992 loan,
United Bank had received from Needham, acting as an agent for the
insurer, a certificate of title from Chicago Title Insurance
Company, Inc. ("Chicago Title") in April 1992. The certificate
said that access to the property was via "private right of way,"
and it indicated that title for this private right of way had been
checked. The certificate purported to serve as temporary insurance
against loss or damage due to a "failure of [the certificate] to
reflect correctly the record title"; it further provided that it
would be "of no further force and effect" after Chicago Title
issued United Bank a permanent insurance policy.
 Shortly thereafter, United Bank closed the loan with
Northern and entered into a more permanent lender's title insurance
contract with Chicago Title. Under the policy, Chicago Title
insured United Bank (up to $1.15 million) for "loss or damage"
resulting from, inter alia, "unmarketability of title" or "[l]ack
of a right of access to and from the land." The policy was subject
to exceptions, but they are not immediately pertinent here. It
also stated that the policy represented "the entire policy and
contract" between the insured and Chicago Title.
 By the summer of 1994, Northern had become unable to meet
its loan repayments, and Caliendo sought and won United Bank's
approval to conduct a nonjudicial sale of the Spencer Lake
property. Alan Nowicki entered the highest bid at the auction and
signed a sales contract obligating him to pay $925,000 for the
entire parcel. Months later, Nowicki sued Falcon, Caliendo, and
United Bank alleging that he had been promised "deeded access" to
the property by a representative of the bank. 
 Chicago Title disclaimed any obligation to defend or
indemnify against losses caused by the Nowicki lawsuit. United
Bank then successfully thwarted Nowicki's attempt in state court to
delay the sale of the Spencer Lake property to a new buyer, and the
property was auctioned in December 1995 for $890,000 (the bidders
having been told that access depended in part on an expired license
and advised to make their own inquiries). According to United
Bank, Nowicki has apparently lost interest in the controversy,
although his lawsuit remains pending.
 When Chicago Title refused to defend against the Nowicki
lawsuit, separate suits were brought against Chicago Title by
Falcon, under a title policy it had obtained in 1986, and by United
Bank under the 1992 policy already described. The Falcon lawsuit
was decided in favor of Chicago Title on summary judgment, and the
dismissal was affirmed by this court in an unpublished opinion. 
Falcon, Inc. v. Chicago Title Ins. Co., No. 96-2249, 1st Cir.,
June 12, 1997. As United Bank was not a party to that case, we do
not treat that unpublished decision as governing the present
litigation, see Loc. R. 36.2(b), but our decisions to the extent
they overlap are not inconsistent.
 United Bank's lawsuit, which is the subject of the
present appeal, sought a declaratory judgment that Nowicki's suit
was covered by Chicago Title's policy; United sought damages for
the costs of defending the Nowicki lawsuit and for losses suffered
"as a result of unmarketability and lack of access" to the
property. In addition to the cost of the Nowicki lawsuit, the
complaint asked for reimbursement for expenses incurred in
maintaining the property during the litigation and the reduced
price received compared to what Nowicki had been willing to pay in
the original contract. 
 In the district court, the parties agreed to proceed
before a magistrate judge under 28 U.S.C. 636(c). Chicago Title
moved for summary judgment, which the magistrate judge granted. He 
said that the policy promised to indemnify against losses due to
the lack of a "right of access"; and he held that such a right of
access did exist under state law--namely, by water over Spencer
Lake. On this premise (and viewing the "unmarketability" provision
as redundant), he ruled that Chicago Title had no duty to defend or
to indemnify. United Bank now appeals.
 At the outset, it is helpful to distinguish between
Chicago Title's duty to defend and its duty to indemnify against
losses due to specified causes, such as a lack of a "right of
access." The two may overlap but are not identical. Under the
express language of the policy, the duty to defend exists where
the law suit "asserts" an adverse claim alleging a defect in title
or "other matter" insured against by the policy. Thus, a lawsuit
asserting lack of a right of access could be covered even if a
right of access were later proved to exist.
 Under Maine precedent, the duty to defend is determined
more or less mechanically by comparing the allegations in the
underlying lawsuit (here, Nowicki's complaint) with the insurance
policy putatively creating the duty to defend (here, Chicago
Title's 1992 policy covering the bank) to determine if "there
exists any legal or factual basis which could be developed at trial
which would obligate the insurers to pay under the policy." NE
Properties, Inc. v. Chicago Title Ins. Co., 660 A.2d 926, 927 (Me.
1995) (quoting Baywood Corp. v. Maine Bonding and Casualty, 628
A.2d 1029, 1030 (Me. 1993)).
 Here, the thrust of Nowicki's suit, so far as access is
concerned, is his express claim in the complaint that he was
specifically promised by United Bank--an attorney is named as the
one making the promise--not merely actual access or even a right of
access, but "deeded access." To make that allegation match the
policy in this case, we would have to accept either that the policy
insuring a "right of access" actually means to insure "deeded
access," or that although Nowicki's complaint refers to deeded
access, the complaint shows "through general allegations" a
"possibility" that the claim falls within the policy. Gibson v.Farm Family Mut. Ins. Co., 673 A.2d 1350, 1352 (Me. 1996).
 The Chicago Title insurance policy nowhere provides any
assurance of deeded access. All that is protected is a "right of
access," which could be secured in a variety of ways. No doubt
deeded access--e.g., a perpetual easement granted in a deed by the
owner of the intervening property--would be more valuable than,
say, an easement by necessity under state law or a year-to-year
license for a fee, such as that originally secured by Caliendo but
allowed to lapse. Read according to its terms, the policy does not
cover a lawsuit whose gravamen is the promise of something
different from and more valuable than a generic right of access.
 Nor is this a case where the allegations of the complaint
are "general" and a "possibility" remains of specifics being
furnished that would bring the complaint within the ambit of the
policy. The duty to defend in such a case exists under Maine case
law where the general allegations may invoke coverage and no
specifics exclude the possibility. Here, the specifics were
furnished and do exclude coverage: counts I and III of Nowicki's
complaint are both specifically grounded in an alleged promise of
"deeded access" (count II is concerned only with relief). 
 On this appeal, United Bank's first and main response is
that the policy should not be read standing alone. United Bank
points out that the original certificate of title issued by Chicago
Title, essentially a report by Needham on his title search as of
March 1992, states that access to the property is by "private right
of way." Taken in conjunction with surrounding language, this
could be read as asserting that "title" to such a right of way had
been established. The language of the certificate is somewhat less
precise than this, but we will assume that it could have been so
read or at least created an ambiguity that might be litigated.
 The difficulty with the bank's argument is that Chicago
Title's certificate by its terms explicitly disclaimed liability
after the policy issued, and the policy itself explicitly purports
to be an integrated document stating the full scope of Chicago
Title's obligations. It would contradict both provisions (the
disclaimer and the integration clause) to read into the policy an
assurance that there existed not just a right of access, but a
"private right of way" confirmed by a title search. Whether or not
there might have been some reformation remedy under Maine law need
not be considered, cf. Yaffe v. Lawyers Title Ins. Co., 710 A.2d
886 (Me. 1998), for no such remedy was invoked.
 The case does not end with our conclusion that Chicago
Title had no obligation to defend the Nowicki lawsuit and is not
liable for United Bank's expenses in defending the lawsuit or for
delays in the sale of the property that were caused by the suit. 
There remains the possibility that United Bank did suffer loss from
lack of a "right of access"; if there were something less than a
right of access, presumably the property would have been worth
somewhat less to the ultimate purchaser, enlarging the deficiency
United Bank claims to have suffered on the mortgage. We say
"somewhat less" with trepidation because--even if we assume that
Falcon had something less than a "right of access" (the next
question to be addressed)--the reduction in value may be
negligible. After all, the intervening land owner had been willing
to give a right-of-way license for $100 a year; and nothing in the 
record suggests that the new owner--who paid almost Nowicki's price
for the land--anticipated any difficulty in obtaining such a
license or obtaining effective access by other means. An affidavit 
by Caliendo, offered by the bank in the district court, states that
he told Nowicki that
 the road in from Rt. 201 was a wide, heavily
 traveled woods road, frequently used for
 recreational use, and that the public used
 this woods road constantly and that the road
 was part of the 'Land Share' program providing
 access for the public to the woods. We
 discussed how this access situation was common
 in the woods of Maine, and that although I had
 at one time obtained a license agreement to
 use the road, I felt it was not necessary.
 The magistrate judge by-passed this issue by concluding
that a "right of access" existed to the Spencer Lake property
without regard to access through the intervening property. He
concluded that under Maine case law, a right of water access can be
treated as a right of access; and because the property at issue
fronts on Spencer Lake and no one disputes that Spencer Lake is a
public lake to which public access is available, the policy's
assurance of a right of access had been met. 
 We are not comfortable with this answer. It appears to
be true under Maine case law that water access can be sufficient to
defeat a claim of a right to an easement by necessity across
another's land. See Amodeo v. Francis, 681 A.2d 462, 466 (Me.
1996). And United Bank does not dispute that an owner of the
Spencer Lake property would have a "right" to reach Spencer Lake
over the property of other fronting landlords and a "right" to use
Spencer Lake to reach the property in question. But its opposition
to summary judgment certainly does raise a question whether in this
case water access is effective.
 United Bank offered an affidavit of Caliendo directed
specifically to access. It says that although the property fronts
on Spencer Lake, "it is not possible to use the lake to gain useful
access"; the boat ramp at the other end of the lake belongs to the
paper company and in any event the road to it is "snowed in all
winter"; heavy equipment needed to develop the property cannot be
moved in by boat; and even for passengers, a boat cannot be used to
get to the part of the lake where the property's lodge is located
"if the water level is too low."
 Even without more--and there is a bit more although not
in affidavit form--this seems to us to raise a factual question
whether water access, even if a "right," is meaningful access in
this case. No Maine case furnished to us suggests that the "right
to access" protected by title insurance would make water access
sufficient if such access were not realistic access. Water access
in this case may or may not be meaningful, but it is not clear how
its adequacy could be decided in favor of Chicago Title on summary
judgment, given the bank's affidavit.
 Chicago Title tells us that there is access by seaplane
landing on the lake and that visitors to a recreational property
often travel in this manner. Possibly there are situations in
which a right of access in this manner is all that is required. 
But there is no case law cited to us showing that this is always so
for all property, and common sense recoils from such a suggestion. 
Thus, we conclude that--if there is no "right" of land access (and
perhaps there is one "by necessity")--the record creates an issue
of fact as to whether a "right" by any other means (assuming one
exists) is adequate in this case.
 With reluctance, we are therefore obliged to remand the
case for further proceedings on the issue whether there existed an
effective "right of access" to the property, by land or otherwise,
and if not, whether the lack of such a right diminished the value
of the property. Caliendo's first affidavit quoted above, claiming
that land access was freely available and a license almost a
formality, makes us doubtful that the bank has much prospect of
substantial damages on this score, especially since the bank
conceded in interrogatory answers that (so far as it knew) "access
has never been blocked or threatened."
 A further reason for our dismay at further proceedings
rests on a different affidavit, this one provided by United Bank's
own president, Bruce Bartlett. In recounting the history of his
dealings with Caliendo, Bartlett refers to Nowicki's concern about
the lack of "deeded access over the six miles" and continues:
 I recall that Caliendo had brought this
 up at the time of the loans, and that it is a
 common situation in the woods. His attorney
 provided us with a clean title policy, so I
 was under the impression that this state of
 affairs was not a problem.

 Being familiar with the north woods and
 the logging business, this did not seem
 troubling to me. The Boise Road off Rt. 201
 has been a heavily used public access to the
 woods for years, and I have never heard of
 this being a problem.

This, coupled with several of the bank's interrogatory answers,
suggests that when United Bank made the original loan or loans to
Northern and obtained the certificate and policy, it knew what
level of land access existed.
 Before United Bank takes more of the district court's
time in this matter, we think that United Bank needs to reflect
carefully about whether it has a serious claim for reduced value
based on the "right of access" clause in the policy where access
was apparently available for a nominal payment. Conversely, since
Chicago Title's agent also apparently knew the true situation, a
split-the-difference payment might be less costly to it than
further litigation and the risk of paying all of the difference
between some "true" value of the property with a right of access
and the later sale price.
 To conclude, we affirm the judgment of the magistrate
judge insofar as he dismissed the duty to defend claim and reverse
the judgment and remand for further proceedings insofar as he
dismissed a claim of loss due to the alleged lack of a right of
access to the property. Each side will bear its own costs on this
appeal.
 It is so ordered.