ENTERED JAN 1 4 2015

STATE OF MAINE                    BUSINESS AND CONSUMER COURT ✓

Cumberland, ss.


DARLENE F. EDWARDS and LEWIS M. EDWARDS, III

Plaintiffs

v.                                         Docket No. BCD-CV-14-13

FIDELITY NATIONAL TITLE INSURANCE COMPANY    AMH-CUM-12-12-14

Defendant

## ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Darlene and Lewis Edwards ["the Edwards"] have filed a Motion for Summary Judgment on the issue of whether Defendant Fidelity National Title Insurance Company ["Fidelity"] has a duty to defend the Edwards under a title insurance policy issued by Fidelity with respect to property of the Edwards in Owls Head, Knox County, Maine.

Fidelity opposes the Edwards' motion , and the Edwards have filed a reply to Fidelity's opposition. The Motion came before the court for oral argument November 21, 2014. Based on the entire record, the court denies the Motion and also renders partial summary judgment against the Edwards on certain aspects of their motion, *see* M.R. Civ. P. 56(c) ("summary judgment, when appropriate, may be rendered against the moving party").

*Background*

In March of 2011, the Edwards purchased certain real property in Owls Head, Maine (the "Edwards Property") and Fidelity issued an owner's policy of title insurance to the Edwards in connection with the Insured Property (the "Policy"). Plaintiffs' Statement of Material Fact ("PSOMF") ¶¶ 1, 2. The Policy was prepared by Mortgage Connect LP, an agent of Fidelity located in Moon Township, Pennsylvania. PSMOF ¶ 3. The Edwards' deed describes the real estate conveyed in terms of five parcels. Schedule A to the Fidelity Policy describes the Land

1

referred to in the Policy[1] in terms of exactly the same legal description as is contained in the Edwards' deed. PSOMF ¶ 4; *see* Defendant's Statement of Material Fact ("DSOMF") ¶ 4.

The third-party claims as to which the Edwards contend Fidelity has a duty to defend arose in two civil actions in the Knox County Superior Court—*Edwards v. Blackman*, Super. Ct., Kno. Cty. Docket No. ROCSC-RE-11-47 and *Gravison v. Fisher*, Super. Ct., Kno. Cty. Docket No. ROCSC-RE-11-51. Both cases have resulted in final judgments in the Superior Court, and are now on appeal in the Supreme Judicial Court of Maine, sitting as the Law Court.[2]

In *Edwards v. Blackman*, the Edwards filed suit against the Town of Owls Head and several individual owners of nearby properties, seeking a declaratory judgment to the effect that neither the Town nor the individual defendants had rights of access or use over the Edwards' property. The individual defendants, all members of the Scott family and hence referred to in the parties' filings as "the Scott Defendants," asserted counterclaims based on several different legal theories. *See* PSOMF Tab 6. Count I of the Scott Defendants' counterclaim asserted that the Scott Defendants hold certain appurtenant deeded easement rights based upon chain of title of recorded deeds and other records. Counts II, III, IV, and V asserted prescriptive easement claims, based on alleged use of the Edwards' land for at least 20 years. Count VI asserted a claim of the right to use the intertidal zone of the Edwards' land for fishing, fowling, navigation, and "any other ocean-based activities consistent with Maine common law . . ." The Town of Owls Head, however, did not assert any affirmative claims in

---

[1] "Land" is defined by the Policy as: "the land described in Schedule A, and affixed improvements that by law constitute real property. The term 'Land' does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy."

[2] Counsel for the parties have supplied this court with copies of the Superior Court decisions, as corrected, in both cases, which the court deems part of the summary judgment record. *See Edwards v. Blackman*, Super. Ct., Kno. Cty. Docket No. ROCSC-RE-11-47, Dec. and Judg. (July 30, 2014) and Order (Aug. 1, 2014) and *Gravison v. Fisher*, Super. Ct., Kno. Cty. Docket No. ROCSC-RE-11-51, Dec. and Judg. (Aug. 22, 2014), Order (Sept. 2, 2014).

2

the nature of counterclaims in the *Edwards v. Blackman* case, but it did enter general denials and affirmative defenses in response to the Edwards' claims against it.

The case of *Gravison v. Fisher* was initiated by David and Beverly Gravison, owners of nearby oceanfront property, against 11 neighboring owners and a trust who claim rights in the Gravison property, and the defendants impleaded the Edwards as necessary parties. These neighbors are referred to as the Cottage Lot Owners in the parties' summary judgment filings. Like the Scott Defendants in *Edwards v. Blackman*, the Cottage Lot Owners in *Gravison v. Fisher* asserted affirmative claims against the Edwards' property on several different theories. Count I asserted that the Cottage Lot Owners hold appurtenant deeded easement rights based upon recorded deeds and other records. Counts II, III, and IV are all prescriptive easement claims, based on alleged, actual use of the Edwards' land for at least 20 years. Count VII asserted the right to use the intertidal zone of the Edwards' land for fishing, fowling, navigation, and "any other ocean-based activities consistent with Maine common law . . ."

The Edwards' Motion For Summary Judgment seeks summary judgment on Fidelity's duty to defend as to all of the claims asserted against the Edwards by the Scott Defendants and the Cottage Lot Owners, and asserts that Fidelity also is obligated to reimburse the Edwards for the cost of litigating against the Town.

*Standard of Review*

M.R. Civ. P. 56(c) provides that summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law."

For purposes of summary judgment, "[a] material fact is one that can affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573 (citing *Kenny v. Dep't of*

3

*Human Services*, 1999 ME 158, ¶ 3, 740 A.2d 560); *see also McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948. A genuine issue exists when sufficient evidence supports a factual contest to require a fact-finder to choose between competing versions of the truth at trial. *See Prescott v. Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169 (citing *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). The court will view the evidence in light most favorable to the non-moving party. *See, e.g., Steeves v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 1998 ME 210, ¶ 11, 718 A.2d 186.

A party wishing to avoid summary judgment must present a *prima facie* case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Services*, 2005 ME 29, ¶ 9, 816 A.2d 63.

When the court rules on a motion for summary judgment, "'[it] is to consider *only* the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements.'" *Handy Boat Serv., Inc. v. Prof'l Services, Inc.*, 1998 ME 134, ¶ 16, 711 A.2d 1306 (quoting *Gerrity Co. v. Lake Arrowhead Corp.*, 609 A.2d 293 (Me.1992)).

*Analysis*

There are four types of claims at issue:

- the claims in Count I of the Scott Defendants' Counterclaim and Count I of the Cottage Lot Owners' claim against the Edwards, both asserting rights in the Edwards property based on deeds or plans of record

- the claims in Counts II, III, IV, and V of the Scott Counterclaims and Counts II, III, and IV of the Cottage Lot Owners Counterclaims, all asserting rights in the Edwards property based on prescriptive use

- the claims in Count VI of the Scott Counterclaims and Count VII of the Cottage Lot Owners Counterclaims to use of the intertidal zone of the beach

4

- the claim of the Town, asserted only in the Town's answer and affirmative defenses in *Edwards v. Blackman* and not in any counterclaim against the Edwards, to own a public easement road by dedication and acceptance

This Analysis begins with discussion of the legal principles defining a title insurer's duty to defend and then of the primary Policy provisions at issue, and thereafter addresses each type of claim in the order just listed.

A. Scope of A Title Insurer's Duty to Defend

The Law Court has indicated that a title insurer's duty to defend is to be determined in the same way as a general liability insurer's duty to defend. In *N.E. Properties, Inc. v. Chicago Title Ins. Co.*, the Law Court indicated that Chicago Title's "duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy. The insured is entitled to a defense if there exists any legal or factual basis which could be developed at trial which would obligate the insurer[] to pay under the policy." 660 A.2d 926, 927 (Me. 1995) (internal citations and quotation marks omitted), *citing Baywood Corp. v. Maine Bonding & Casualty*, 628 A.2d 1029 (Me. 1993). *See also Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶¶ 9-10, 36 A.2d 876, 879. Only the complaint and the policy are considered. *Id.*, 2011 ME 133, ¶ 9, 36 A.2d at 879.

As with other types of insurance policies, ambiguities in a title insurance policy are to be resolved against the insurer and in favor of the insured. *Cox v. Commonwealth Land Title Ins. Co.*, 59 A.3d at 1283. Policy language "is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought." *Id.* (internal citations omitted). On the other hand, unambiguous language will be given its plain meaning. *See Johnson v. Allstate Ins. Co.*, 1997 ME 3, ¶ 9, 687 A.2d 642, 644 (although "ambiguous language is to be construed

5

against the insurer, we will not rewrite the contract when the language of the policy is unambiguous. 'The terms of a policy cannot be enlarged or diminished by judicial construction.' *Limberis v. Aetna Casualty and Surety Company,* 263 A.2d 83, 86 (Me.1970)").

B. Policy Provisions At Issue

The Fidelity Policy issued to the Edwards contains several provisions relevant to the Plaintiff's Motion for Summary Judgment.

The initial section of the Policy, titled Covered Risks, provides that the Policy "insures . . . against loss or damage . . . sustained or incurred by the Insured by reason of" a list of 10 enumerated matters including the following:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title.

3. Unmarketable Title. . . .

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without knowledge.

PSOMF ¶ 5 (the Policy, Covered Risks) & Tab 1 at 1.

Schedule B to the Policy contains several pertinent exceptions to coverage:

"This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of:

1. Rights or claims of parties in possession not shown by the public records.

4. Easements or claims of easement not shown of public record.

6. Covenants, conditions, restrictions, rights of ways, easements, reservations, riparian rights of water rights affecting said premises as contained in prior chain of title or as shown on the recorded plan.

8. Subject to the easement and riparian rights of others to so much of the premises which lies beneath the waters of an un-named mineral spring.

9. The company does not insure against claim of liability to any portion of the premises which lies beneath said waters of an un-named mineral spring.

6

10.     Subject to an easement recorded in Book 441 Page 335.[3]

PSOMF ¶ 6,; *id* Tab 1, Policy Schedule B.

Regarding the references in the Exceptions numbered 1 and 4 to "public records," the Definitions section of the Policy Conditions defines "public record" in pertinent part as "Records established under state statutes [ ] for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without [actual knowledge]," PSOMF, Tab 1. The parties agree that any document recorded at the Knox County Registry of Deeds as of March 14, 2011 constitutes a "public record" as defined by the Policy. Subchapter 2 (Recording) of Chapter 7 (Conveyance of Real Estate) of Title 33 (Property) of the Maine Revised Statutes provides for the recording of documents in the "registry of deeds within the county where the land lies" in order to impart such constructive notice. 33 M.R.S.A. §§ 201 *et seq.*

Regarding the reference in Exception No. 6 to "prior chain of title," the Policy contains no definition of the term, but the parties agree that the Black's Law Dictionary definition of "chain of title" is apt: "the "record of successive conveyances, or other forms of alienation, affecting a particular parcel of land, arranged consecutively, from the government or original source of titled down to the present holder." The parties do disagree about the extent to which the Maine Title Standards define precisely what instruments of record are within or outside the chain of title. The chain of title issue is discussed in more detail below.

Regarding the reference, also in Exception No. 6, to "the recorded plan," the Edwards contend that the reference is ambiguous because it does not specify which "recorded plan" is meant. Fidelity asserts that the reference to "the recorded plan" is not ambiguous in context,

---

[3]   The easement is for "the use of two feet of land on all sides of the land herein conveyed for the purpose of erecting a staging or ladders for minor repairs." PSOMF ¶ 14.

7

and can only refer to a plan mentioned several times in the property description in Schedule A of the Policy and also relied on by the Scott Defendants and the Cottage Lot Owners in their counterclaims. This issue, too, is discussed in more depth below.

Section 5(a) of the Policy Conditions limits Fidelity's duty to defend as follows:

> (a) Upon written request by the Insured . . . the Company, at its own cost and without unreasonable delay, shall provide for the defense of the Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

This definition, which is relevant mainly to the Edwards' contention that Fidelity is obligated to cover the defense of the Town's assertion of a dedicated public easement, is discussed further below.

Finally, the choice of law provisions at Section 17 of the Policy Conditions provides for the law of the jurisdiction in which the Edwards property is located to apply.

C. The Counterclaims Based on Deeded Rights Regarding the Edwards Property

The parties' disagreement about "chain of title" and "recorded plan" are relevant to the question whether Fidelity has a duty to defend against the claims in Count I of the Scott Defendants' Counterclaim and Count I of the Cottage Lot Owners' claim against the Edwards, both of which are based on alleged deeded rights of use and/or access in the Edwards property.

The Edwards' position is that Fidelity is obligated to defend them against these claims because the rights of access and use that the Scott and Cottage Lot deed claims are alleged to be of record, according to both Counterclaims, but are not shown on records within the Edwards' "chain of title" or shown on "the recorded plan." Fidelity's position is the opposite.

There are two recorded plans mentioned in the property description contained in Schedule A of the Policy. The more prominently featured one is what the Policy refers to as a plan of Coopers Beach made by "Blackington", dated June 1882 and recorded at Plan Book Volume 3, Page 81, Knox County Registry of Deeds. A copy of the plan is in the record, and indicates that the surveyor's name is actually spelled Blackinton. *See* PSOMF Tab 10. The other plan is mentioned in the Schedule A description as follows: "Reference is made to "plan of land at Cooper's Beach, dated November 1934, and recorded at the Knox County Registry of Deeds, Plan Book 4, Page 39."

The fact that there are two plans of record mentioned in the description of the covered property creates an obvious material ambiguity as to which plan is meant in Exception No. 6, which excludes coverage as to rights of way and easements "shown on the recorded plan." Fidelity attempts to overcome the ambiguity by noting that the Blackinton plan is the only recorded plan identified by the name of the surveyor, and likewise the only plan mentioned in the Counterclaims of the Scott and Cottage Lot parties against the Edwards[4], but that difference does not remove the ambiguity.

When there is an ambiguity in an insurance policy, as with any contract containing a material ambiguity, the ambiguity may be resolved by extrinsic evidence. However, in this case, neither party has proffered any extrinsic evidence in the summary judgment filings that might resolve the ambiguity. Thus, the ambiguity must be resolved according to the rules of constructions that apply to contracts of insurance generally.

---

[4] Fidelity's memorandum notes, "Fidelity disagrees with the Edwards that the reference to 'recorded plan' is ambiguous in the context of the Policy or in this case since, as set forth above, there is only one recorded plan at issue, namely the Blackinton Plan, which is the only such plan referred to in either of the Scott or Cottage Lot Owners Counterclaims against the Edwardses, and is the only such plan referred to by surveyor name in the Policy." However, the fact that the only plan "at issue," i.e., mentioned in the Counterclaims against the Edwards, is the Blackinton plan, does not mean that it is "the recorded plan" referred to in Exception No. 6.

As the insurer and drafter of the policy, Fidelity bears the burden of any material ambiguity as to coverage. Exception No. 6 could easily have been worded to read "shown on *any* recorded plan" or "as shown on the recorded *plans.*" Accordingly, this court concludes that Exception No. 6 must be construed in a manner favorable to the insured, in favor of coverage.

However, for two reasons, this does not mean that the Edwards obtain summary judgment:

First, the reference in Exception No. 6 to "recorded plan" must mean either the Blackinton plan or the 1934 plan by an unnamed surveyor. Although the Scott Defendants and the Cottage Lot Owners frame their claims in terms of the Blackinton plan, it is not clear what, if any easements and covenants are depicted on the other plan—the 1934 plan.

Second, the "chain of title" exclusion in Exception No. 6 may furnish a separate basis for excluding coverage for the claims of Scott Defendant and Cottage Lot Owners. The court agrees with the Edwards' definition of "chain of title," meaning that it refers to the sequence of deeds running from them backward in time through successive grantors, and does not extend to deeds, whether or not of record, that lie outside that sequence. The Edwards in their summary judgment briefs contend that some of the claims against them rest on recorded deeds outside the chain of title, but it is not clear, as least to this court, which deeds those are and how they relate to the claims against the Edwards. The Superior Court decisions in *Edwards v. Blackman* and *Gravison v. Fisher* do not elucidate those uncertainties.

Thus, regarding the Counterclaims against the Edwards based on deeded rights— the claims in Count I of the Scott Defendants' Counterclaim and Count I of the Cottage Lot Owners' claim against the Edwards—the court denies summary judgment. There may need to be an evidentiary hearing as to whether the deeds relied on by the Scott and Cottage Lot Owners in their Counterclaims are all within the Edwards' "chain of title," and also as to what

10

easements are shown on both of the recorded plans mentioned in the Schedule A description. The applicability of and relevance of the Maine title standards can be determined in the context of that hearing.

### D. The Counterclaims Based on Prescriptive Easement and Other Rights Not of Record

The claims in Counts II, III, IV, and V of the Scott Counterclaims and Counts II, III, and IV of the Cottage Lot Owners Counterclaims all assert rights based on prescriptive use, and thus by their nature are "[e]asements or claims of easement not shown of public record" for purposes of Exception No. 4 in Schedule B of the Policy. At oral argument, counsel for the Edwards acknowledged, appropriately in the court's view, that there is no coverage for these claims.

Rule 56(c) permits summary judgment to be rendered against the moving party when there are no genuine issues of material fact and the non-moving party is entitled to judgment as a matter of law. This issue presents such a situation. The court will grant summary judgment to Fidelity with respect to the prescriptive easement claims of the Scott and Cottage Lot parties.

### E. The Counterclaims Based on The Right of The Public to Use the Intertidal Zone

Similarly, the claims in Count VI of the Scott Counterclaims and Count VII of the Cottage Lot Owners Counterclaims to use of the intertidal zone of the beach also constitute "[e]asements or claims of easement not shown of public record" for purposes of Exception No. 4. Here, too, the Edwards appropriately acknowledged that there is no coverage for the defense of such claims, so the court renders summary judgment in favor of Fidelity on this issue.

### F. The Town's Claim of Dedicated Public Easement

The last type of claim at issue is the Town's claim to have a dedicated public easement over a portion of Cooper's Beach Road. The Edwards assert that the Town presented a claim

11

of right within the scope of the Policy, whereas Fidelity contends that there is no coverage because the Edwards sued the Town and because the Town never filed a counterclaim and has never initiated litigation against the Edwards.

There is no doubt that the Town "claimed" to hold a dedicated public easement, and thus, under the common definition of "claim," could be deemed to have asserted a "claim" adverse to the covered property. However, the language of the Policy unambiguously defines Fidelity's duty to defend in a manner that, in the court's view, excludes coverage of the Town's public easement "claim", based on the way that the "claim" was and was not asserted in the *Edwards v. Blackman* case.

The pertinent Policy language appears in section 5(a) of the Policy Conditions:

[T]he Company, at its own cost and without unreasonable delay, shall provide for the *defense of the Insured in litigation in which any third party asserts a claim* covered by this policy adverse to the Insured. This obligation is limited to only those *stated causes of action* alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those *stated causes of action.*

Even if the Town's assertion of a public easement over part of Cooper's Beach Road could be deemed a "claim" in the common parlance and understanding, the terms of the Policy define Fidelity's duty to defend in terms of claims asserted in litigation, in the form of a "stated cause of action." The Policy clearly and unambiguously limits Fidelity's duty to defend to "stated causes of action alleging matters insured against by this policy." A cause of action cannot be equated with an affirmative defense. *See Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.,* 771 F.3d 391, 401 & n.7 (7th Cir. 2014) (title insurer had no duty to defend against an affirmative defense because policy limited duty to defend to "causes of action" and an affirmative defense is not a cause of action).[5]

---

[5] There is some authority to the effect that an affirmative defense can trigger a duty to defend against it on the part of a title insurer, but this appears to be limited to mortgage foreclosure actions in which

12

As Fidelity points out, to create a duty on the part of a title insurer to defend against affirmative defenses asserted in title litigation commenced by the insured would in effect require the insurer to fund the insured's title claims, whether or not they are valid or even necessary.

Because the Town of Owls Head never asserted a claim in litigation against the Edwards, and never stated a cause of action against the Edwards, Fidelity's duty to defend was not triggered with regard to the Town's public easement. Thus, Fidelity is entitled to summary judgment on this issue.

*Conclusion*

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is denied.

Summary judgment is hereby granted to the Defendant as to the following, based on there being no duty to defend:

- the claims in Counts II, III, IV, and V of the Scott Counterclaims and Counts II, III, and IV of the Cottage Lot Owners Counterclaims, all asserting rights in the Edwards property based on prescriptive use

- the claims in Count VI of the Scott Counterclaims and Count VII of the Cottage Lot Owners Counterclaims to use of the intertidal zone of the beach

---

the defendant mortgagor asserts an affirmative defense that amounts to a claim of title adverse to the plaintiff mortgagee, triggering a duty to defend on the part the mortgagee's title insurer. *See Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d at 402. What differentiates a mortgage foreclosure action from the Edwards' action against the Town is that in the former, it is the affirmative defense that introduces a title issue into the case, whereas the Town's affirmative defense was in opposition to the Edwards' cause of action. Given the "stated cause of action" requirement in the Fidelity Policy at issue in this case, to find a duty to defend against an affirmative defense would be to rewrite the Policy.

- the claim of the Town, asserted only in the Town's answer and affirmative defenses in *Edwards v. Blackman* and not in any counterclaim against the Edwards, to own a public easement road by dedication and acceptance

The clerk will schedule a conference of counsel to discuss further proceedings on the remaining issues, which relate to the claims in Count I of the Scott Defendants' Counterclaim and Count I of the Cottage Lot Owners' claim against the Edwards, both asserting rights in the Edwards property based on deeds or plans of record.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated December 12, 2014

A. M. Horton, Justice
Maine Business and Consumer Court

Entered on the Docket: 12-12-14
Copies sent via Mail ___ Electronically ✓

14

**Darlene F. Edwards and Lewis M. Edwards, III. v. Fidelity National Title Insurance Company**
**BCD-CV-14-13**


**Darlene F. Edwards and Lewis M. Edwards, III.**
  **Plaintiffs**

  Counsel:                    James Barns, Esq.
                              361 US Route 1
                              Falmouth, ME 04105

                              Mary Cooper, Esq.
                              17 Sea Street
                              PO Box 190
                              Camden, ME 04843


**Fidelity National Title Insurance Company**
  **Defendant**

  Counsel:                    Brent Singer, Esq.
                              F. D. Walker, Esq.
                              84 Harlow St.
                              PO  Box 140
                              Bangor, ME 04402-1401