MERTON H. SWIFT, Conservator

*vs.*

PATRONS' ANDROSCOGGIN MUTUAL FIRE INSURANCE CO.

Kennebec.    Opinion April 10, 1926.

*A contract of insurance is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument.*
*As a general rule the use of a prohibited article, or the keeping and using of it, must be permanent or habitual in order to violate a policy prohibition against it.*

In the instant case, threshing grain, cutting ensilage, and pressing hay being of common knowledge seasonal operations, it must be assumed that that fact was known to the assured as well as to the insurer at the time the contract was made. The permanency of the location and use of gasoline engines in threshing, ensilage cutting and hay pressing contemplated by the parties to this contract, therefore, was only that required to complete the season's work, and the location and use of the gasoline engine appearing to have been in the course of the hay pressing operation for that season, the policy prohibition was violated.

The fact that the engine was located and used in the barn by the hay pressers without knowledge or consent of the assured or his conservator is immaterial. When control of the premises was committed to the hay pressers the assured became responsible for their acts in violation of the policy.

On report on an agreed statement of facts. An action on a fire insurance policy. On January 17, 1925, a set of farm buildings located in the town of Sidney, of which plaintiff was conservator, was destroyed by fire. In the barn which was covered by the policy was located and used a gasoline engine in hay pressing operations. The general issue was pleaded and under a brief statement liability was denied on the ground that the location and use in the barn of a gasoline engine was prohibited in a clause in the policy, rendering the policy void. Judgment for the defendant.

The case is fully stated in the opinion.

*Pattangall, Locke & Perkins*, for plaintiff.

*Harry Manser*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, JJ.

STURGIS, J. This is an action on a fire insurance policy brought by the plaintiff as conservator of his ward's estate. The case is before this court upon an agreed statement of facts.

It appears that while Wadleigh Brothers, of Belgrade, were engaged in pressing·the assured's hay, using a combination gasoline engine and hay press assembled in a single unit, which, without the knowledge of the assured or his conservator, was located and in operation in a barn covered by the policy, the barn burned. The cause of the fire is not stated, and the originating responsibility of the engine is left problematical.

This policy was in the regular standard form, and contained, in addition to the usual provisions, the following: "It is also a part of the consideration of this policy and it is especially agreed that the location and use of any gasoline engine in any building described in the application for this policy, for furnishing power to thresh grain, cut ensilage or press hay renders this policy void. Gasoline engines may be set up on outside of barns and other buildings and power transmitted to machines within by means of a long belt. Small gasoline engines of from one to three horse power and of standard and approved makes may be used in insured buildings for pumping water, making electricity, running milking machines and other light farm work when same are set up in a place kept clean and free from oily rags and other inflammable material and gasoline tank filled only by daylight or incandescent electric light." By the stipulation of the parties, the defendant's denial of liability is based on the foregoing provision in the policy.

A contract of insurance, like any other contract, is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how far one clause is explained, modified, limited or controlled by the others. *Blinn* v. *Ins. Co.*, 85 Maine, 389. *Smith* v. *Blake*, 88 Maine, 247.

This restrictive provision in this policy under consideration is a special condition of the contract, additional to the general prohibited articles clause. Reading the entire provision together, it appears

that permission is in fact given to set up gasoline engines outside of buildings insured, transmitting power to the machines within by means of a long belt. It is only the location and use of gasoline engines within buildings insured for furnishing power to thresh grain, cut ensilage, or press hay, which is prohibited. The effect of the entire provision is to restrict the place and manner of use, but not the use itself.

As a general rule, the use of a prohibited article, or the keeping and using of it, must be permanent or habitual in order to violate a policy prohibition against it. This rule is of general acceptance, and has been applied in leading American and English decisions. See 13 A. & E. Ann. Cases, 540. 26 C. J., 222.

In *Bouchard* v. *Insurance Co.*, 113 Maine, 17, the general prohibited articles clause provided that the policy should be void if certain enumerated articles "shall be kept or used by the insured on the premises insured." One of the buildings insured burned while a gasoline engine was being used in it to thresh grain, and the case turned on whether or not the keeping or using of the gasoline in the tank of the engine was in violation of the policy inhibition. The court held that the prohibition in that policy contemplated an habitual and customary keeping or using of gasoline, and that the use of the fluid in the manner and under the conditions stated was temporary only and did not avoid the policy.

In the instant case it is the "location and use" of the engine itself in a place and for a purpose specifically prohibited by the policy which is in issue. To "locate" is "to set or establish in a particular spot or position; to settle; station; place." Webster New Int. Dic. The idea of permanency springing from "use" is well recognized. And while the words "location and use" in this policy restriction do not, perhaps, import the same degree of permanency which is found in "kept or used" in the Bouchard case, we think they do convey an idea of something more than a mere temporary or incidental operation of the engine.

It does not appear in the agreed statement of facts how long the engine in question had been in operation within the barn at the time of the fire, nor how long it would take to press the hay. It is common knowledge, however, that hay pressing is seasonal and temporary rather than permanent or habitual, and is usually completed in a few days or weeks at the most on the average farm. Ensilage cutting

and threshing of grain are of a like seasonal and temporary character. These facts, we must assume, were known to the assured as well as the insurer at the time the contract was made, and must be taken into consideration in construing the rights of the parties thereunder. *Bouchard* v. *Ins. Co.*, supra.   *Guptill* v. *Ins. Co.*, 109 Maine, 323.

The permanency of the location and use of gasoline engines in threshing, ensilage cutting and hay pressing, contemplated by the parties to this contract, was that required to complete the season's work.   It was not intended as a year round or customary operation. Inferring, as we must, that the location and use of this gasoline engine was in course of the hay pressing operation for that season, we think the location and use was of that degree of permanency which the insured as well as the insurer intended to contract against.

In *Wilson* v. *Vermont Mut. Fire Ins. Co.*, 75 Vt., 328, a portable steam engine was used to operate an ensilage cutter within a prohibited distance from the barn destroyed; and upon the plaintiff's contention that the use was temporary the court says:  "Applying a liberal rule of construction to the word 'use' as employed in the restrictive clause, we think the use of the engine was in violation of this contract.   Its use was as permanent as the work of filling the silo required."

We are of the opinion that when the parties included in an insurance contract an express prohibition of a particular use of limited permanency which was well known at the time, the court cannot by construction find an implied permission therefor by adding the same to the contract which the parties made.   It is the function of the court to interpret the contract made by the parties.   It has no power to add to it or take from it.   *Dunning* v. *Accident Association*, 99 Maine, 394.   *Imperial Fire Ins. Co.* v. *Coos Co.*, 151 U. S., 452.

The assured contends, however, that the use of the engine in the manner stated was necessarily incident to his farming operations, and therefore presumed to be recognized and impliedly permitted by the insurer.   If the facts warranted his claim, his contention would be supported by authority.   *Bouchard* v. *Ins. Co.*, supra, and cases cited 26 C. J., 223.   The rule, however, is based on necessity; and where there is no necessity, as in this case, it can have no application.   Express permission is given in this policy for use of gasoline engines outside of the buildings, with transmission of power to the machines within by a long belt; and it does not appear that this

provision for the necessities of the assured in his farm operations is inadequate, or that material inconvenience or inefficiency results from the substitution of belt transmission for direct drive.

The final contention of the plaintiff is that the location and use of this engine in pressing the assured's hay in the barn is not a violation of the prohibition under consideration, because the location and use was unauthorized, and without the knowledge, consent or direction of the assured or his conservator. Authorities do not sustain this contention. Wadleigh Brothers, who were operating the engine at the time of the fire, were pressing the assured's hay under a contract with his conservator. They were in no sense strangers or trespassers. When the assured engaged that the prohibited thing should not be done, and when he committed the control of the insured premises to Wadleigh Brothers, he became responsible for their acts in violation of the policy. *Liverpool & London Ins. Co.* v. *Gunther*, 116 U. S., 113. "It is equally unimportant that the respondent was ignorant that such business was carried on. The question whether a warranty has been broken, can never depend upon the knowledge or ignorance or intent of the party making it, touching the acts or the fact constituting the breach." *Mead* v. *Northwestern Ins. Co.*, 7 N. Y., (3 Seld.), 530.

The real question at issue is whether the contract of insurance has in fact been broken. If it has, then by its own terms it is rendered void. It is immaterial whether the fire was caused by the engine or not. The policy was forfeited when in the course of the season's pressing the engine was first used, and the plaintiff and his ward were uninsured thereafter. *Bouchard* v. *Ins. Co.*, supra, at page 23. *Dolliver* v. *Ins. Co.*, 111 Maine, 275.

*Judgment for defendant.*