## PEERLESS INSURANCE COMPANY

v.

## Robert C. BRENNON, et al.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1989.

Decided Sept. 6, 1989.

James D. Poliquin (orally), Norman, Hanson & Detroy, Portland, for plaintiff.

Durward W. Parkinson (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for Robert Brennon and Charles Archer dba Freedom Farm Builders.

Robert Mongue, Coles & Mongue, Kennebunk, for Eugene and Antoinette C. Argiro.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

WATHEN, Justice.

Plaintiff Peerless Insurance Company (hereinafter the insurer) appeals from a summary judgment of the Superior Court (York County, *Fritzsche, J.*) requiring Peerless to defend Robert C. Brennon and Charles Archer d/b/a Freedom Farm Builders (hereinafter Builders) in an action instituted against them by Eugene and Antoinette Argiro. The insurer argues on appeal that the standard general liability policy provided to the insured explicitly excludes coverage and an insurer's obligation to defend the insured under the circumstances alleged in the Argiros' complaint. In advancing this argument, the insurer contends that we should reject our contrary holding in *Baybutt Construction Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914 (Me.1983) construing standard insurance policies. We agree and vacate the judgment.

In 1984 the Argiros entered into a contract with Builders for the framing of two homes. Thereafter the Argiros instituted a suit for breach of contract claiming that Builders had performed the construction in an unworkmanlike manner and had deviated substantially from the plans and specifications. The Argiros further alleged that, as a result of Builders breach of contract, they had been required to hire a second contractor and had suffered damages in the amount of $80,000.

The insurer provided insurance to Builders under a standard Comprehensive General Liability policy from January 1, 1983 to January 1, 1985. Builders tendered the defense of the action brought by the Argiros to the insurer and the insurer refused to assume the defense of the action. The insurer instituted the present action pursuant to 14 M.R.S.A. §§ 5951–5963 (1980) seeking a declaratory judgment to the effect that it has no duty to defend the insured under the terms of the Comprehensive General Liability Policy. In support of its position that it has no duty to defend, the insurer asserted that the damages were not caused by an "occurrence" as required by the policy and that certain exclusions provided for in the policy exclude coverage and any obligation to defend under the circumstances alleged in the Argiros complaint. Builders counterclaimed against the insurer seeking, *inter alia*, a declaratory judgment to the effect that insurer did have the duty to assume the insured's ·defense in the action brought by the Argiros. Builders noted in its counterclaim that the Argiros had filed an amended complaint alleging that "[i]n late 1984, wind loading of the premises occurred resulting in lateral movement or binding of the walls to the premises."

The insurer moved for summary judgment pursuant to M.R.Civ.P. 56 on its complaint for declaratory judgment and on the insured's counterclaim on the grounds that there were no material issues of fact and that the insurer was entitled to judgment as a matter of law. The insured moved for partial summary judgment on its counterclaim. The sole issue before the Superior Court on the summary judgment motions

was whether the insurer had the duty to defend. The Superior Court, relying on our previous decisions and on the allegation concerning wind loading in the Argiros' amended complaint, denied the insurer's motion for summary judgment and granted the insured's motion for partial summary judgment. The Superior Court also required that the insurer pay any attorney fees and costs incurred by the insured in defending the action instituted by the Argiros from the time the Argiros filed the amended complaint.

In evaluating the question of an insurer's duty to defend its insured we have previously set forth the following guidelines:

> In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage. Moreover, where there is an ambiguity in the language of the policy, the doubt should be resolved in favor of finding that the insurer has a duty to defend the insured.

*Union Mutual Fire Ins. Co. v. Topsham,* 441 A.2d 1012, 1015 (Me.1982). Whether a given insurance contract is ambiguous is a question of law for the court. *E.g., Banker's Life Ins. Co. of Nebraska v. Eaton,* 430 A.2d 833, 834 (Me.1988). "The language of a contract of insurance is ambiguous if it is reasonably susceptible of different interpretations." *Brackett v. Middlesex Ins. Co.,* 486 A.2d 1188, 1189 (Me.1985). In addition, "[a] policy is ambiguous if an ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought ...." *Allstate Ins. Co. v. Elwell,* 513 A.2d 269, 271 (Me.1986). Nevertheless, "[t]he court must interpret unambiguous language in a contract according to its plain and commonly accepted meaning." *Brackett v. Middlesex Ins. Co.,* 486 A.2d at 1190. Finally, in determining whether an insurance contract is ambiguous, the long-

standing rule in Maine requires an evaluation of the instrument as a whole.

A contract of insurance, like any other contract, is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how far one clause is explained, modified, limited or controlled by the others.

*Swift v. Patrons Androscoggin Mutual Fire Ins. Co.*, 125 Me. 255, 256, 132 A. 745, 746 (1926).

The portion of the comprehensive general liability insurance policy dealing with coverage provides as follows:

The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

The exclusions from coverage that are allegedly relevant to the present dispute provide as follows:

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

. . . .

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith:

In *Baybutt Construction Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914 (Me. 1983), we construed identical provisions in a comprehensive general liability insurance policy. In *Baybutt* the underlying litigation involved an action for negligent construction and breach of implied warranties brought by the City of Waterville against Baybutt Construction Corp. following the collapse of a roof of a building constructed by Baybutt for the City. As in the present case, Baybutt Construction Corp. tendered the defense of the action to its insurance carrier and the carrier denied coverage and refused to defend. The Superior Court granted summary judgment for Baybutt Construction Corp., holding that the insurance carrier was obligated to provide Baybutt with a defense of the action. This Court affirmed.

The principal question in *Baybutt,* as in the present case, was the interrelationship between exclusion (a) and exclusions (n) and (o). Baybutt Construction Corp. relied on exclusion (a) in support of its claim of coverage and the insurance carrier's obligation to defend. The insurance carrier claimed that exclusions (n) and (o) deny coverage and that it thus had no duty to defend Baybutt Construction Corp. The Court first recognized that "[w]hile standing alone, exclusions (n) and (o) . . . would appear to exclude coverage to an insured contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are to the subject property of the construction contract . . . ." *Id.* at 920. We then focused on the exception to exclusion (a) and stated that the exception

constitutes a double negative, seemingly indicating that the general liability coverage of the policy does comprise coverage

of liability for breach of contractual warranties. True, this exception to exclusion (a) may not be considered as creating coverage in and by itself in the area of breach of warranty of fitness or quality of products or workmanship and could reasonably be seen as a limit on the scope of exclusion (a); nevertheless, in doing so, it creates the appearance that the coverage affirmatively preserved by the exception from the stated exclusion is to be retained as part and parcel of the general liability coverage provided by the policy.

*Id.* The Court concluded as follows:

The two exclusions (n) and (*o*), when viewed together with the exception to exclusion (a), absent any express and clear statement concerning their respective priority inter se, create an ambiguity respecting whether the exclusion or the exception to the exclusion is to be the prevailing operative segment of this comprehensive insurance contract in the case of breaches of warranty for defective materials and workmanship.

*Id.* In accordance with the canons of construction pertaining to insurance contracts, the Court resolved the ambiguity in favor of the insured.

We now conclude that the Court in *Baybutt* mistook complexity for ambiguity and thus erred in stating that the exception to exclusion (a), when read in conjunction with exclusions (n) and (*o*) create an ambiguity. In reaching this conclusion, we join the majority of jurisdictions that have addressed the issue. At least one commentator has noted that the distinction between an "occurrence of harm risk" and a "business risk" is "critical to understanding" a comprehensive general liability insurance policy.

An "occurrence of harm risk" is a risk that a person or property other than the product itself will be damaged through the fault of the contractor. A "business risk" is a risk that the contractor will not *do his job* competently, and thus will be obligated to replace or repair his faulty work. The distinction between the two risks is critical to understanding a CGL policy. A CGL policy covers an occurrence of harm risk but specifically excludes a business risk.

Note, *Baybutt Construction Corp. v. Commercial Union Insurance Co.: A Question of Ambiguity in Comprehensive General Liability Insurance Policies,* 36 Me.L.Rev. 179, 182 (1984). The policies provide coverage for the former but its exclusion provisions preclude coverage for the latter. *Id.* at 182–83. The dissent in *Baybutt* correctly perceived the distinction.

Exclusions (n) and (*o*) clearly and unequivocally preclude coverage for the business risk that the insured contractor's product or completed work prove to be unsatisfactory. If, as in the instant case, a contractor performs unsatisfactory work, repair or replacement of the faulty work is a business expense for which insurance coverage is not provided. Conversely, if the faulty work causes an accident resulting in physical damage to others, coverage is afforded and the exception to exclusion (a) preserves coverage even if the claim is based upon a quasi-contractual warranty theory.

*Baybutt Construction Corp.,* 455 A.2d at 923 (Wathen, J. dissenting). Because the language in exclusions (n) and (*o*) is unambiguous, we must interpret those exclusions according to their plain and commonly accepted meaning. We agree with the reasoning of the Supreme Court of New Jersey:

Because we are of the view that exclusion "(a)" cannot serve to becloud the clear import of the "business risk" exclusions, we necessarily disagree that an ambiguity exists in the policy before us. ... We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage. In that instance, application of the test of the objectively reasonable expectation of the insured often will result in benefits of coverage never intended from the insurer's point of view. The benefits granted, however, will pertain to the same landscape of risk as contemplated by the policy in issue,

that is, the "doctrine of ambiguity" works to effectuate the consumer's expectation that the policy purchased extended greater coverage in the particular underwriting area. ... In this case Stone–E–Brick's interpretation of the policy would result in coverage for repair and replacement of its own faulty workmanship. This interpretation relies on the supposition that the exception to exclusion "(a)"—"but this exclusion does not apply to a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner"—grants coverage for claims based on the warranty described. Not so. The contention runs directly counter to the basic principle that exclusion clauses subtract from coverage rather than grant it.

*Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 246–47, 405 A.2d 788, 794–95 (1979) (citations omitted).

Having concluded that the exception to exclusion (a) in the comprehensive general liability policy creates no ambiguity when read in conjunction with exclusions (n) and (*o*), we must nevertheless decide whether the principles of stare decisis compel us to adhere to our decision in *Baybutt*. In *Adams v. Buffalo Forge*, 443 A.2d 932, 935 (Me.1982), we recognized that whether the doctrine of stare decisis "should be applied or avoided is a decision which rests in the discretion of the court." We explained the doctrine in the following terms:

> The underlying rationale of the doctrine of stare decisis is the obvious need to promote consistency and uniformity of decisions. The doctrine has been said to serve as a brake upon legal change to be applied in the interests of continuity. While we recognize the unquestioned need for the uniformity and certainty the doctrine provides, we have also previously recognized the dangers of a blind application of the doctrine merely to enshrine forever earlier decisions of this court. When principles fail to produce just results, this Court has found a departure from precedent necessary to fulfill its role of reasoned decision making.

> ....

> Courts properly seek to create a framework of continuity amidst a universe of continuous change in order that those citizens and litigants who rely upon the legal doctrines and principles they announce may conduct their day-to-day affairs without fear that their reasonable expectations will be torn asunder by an unforeseen and radical departure from precedent. Conversely, there should be greater readiness to abandon a rule of doubtful adequacy in dispensing exact justice, when the rule to be discarded may not reasonably be supposed to have determined the conduct of litigants.

*Id.* (citations and quotations omitted). The insured does not assert any reliance upon the *Baybutt* rule in entering into either the contract with the insurer or the contract for construction work with the Argiros. This is therefore an appropriate situation for abandoning a doubtful rule.

The entry is:

Judgment of the Superior Court vacated. Remanded for the entry of summary judgment in favor of plaintiff finding no duty to defend.

McKUSICK, C.J., and GLASSMAN, CLIFFORD and HORNBY, JJ., concurring.

ROBERTS, Justice, dissenting.

I do not join the Court's decision to overrule *Baybutt Construction Corp. v. Commercial Union*, 455 A.2d 914 (Me.1983). Although I agree that *Baybutt* was wrongly decided, that decision was carefully considered by the Court then sitting. *See Runyon v. McCrary*, 427 U.S. 160, 189–92, 96 S.Ct. 2586, 2603–05, 49 L.Ed.2d 415 (1975) (Stevens, J., concurring). Like Justice Stevens, I believe it's better at times to adhere to a wrongly decided precedent. Moreover, the Court's reliance on *Adams v. Buffalo Forge*, 443 A.2d 932 (Me.1982), is misplaced simply because people do not rely on principles of tort law in the same way that they are guided by contract principles. When considering the application of *stare decisis*, we should not look for evidence of reliance by the present litigants as

the Court appears to do, slip op. at 9. Rather, we should consider whether the legal principle is one by which people generally conduct their affairs. Our adoption of the minority rule in *Baybutt* established the legal framework within which the standard Comprehensive General Liability policy has been interpreted in Maine since 1983. Peerless and other insurers could limit the impact of *Baybutt* by the simple expedient of attaching a rider to the standard policy. Because Peerless did not limit its policy prior to the damage sustained by the Argiros in 1984, I would affirm the judgment of the Superior Court.