# United States Court of Appeals
## For the First Circuit

No. 11-2208

OXFORD AVIATION, INC.; JAMES HOROWITZ; LOUISE GARLLAND,
a/k/a Louise Gartland; JOEL LUSKY; MIKE GAGNON,

Plaintiffs, Appellants,

v.

GLOBAL AEROSPACE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

James D. Poliquin with whom Norman, Hanson & DeTroy, LLC was
on brief for appellants.
Timothy C. Bass with whom Greenberg Traurig, Thomas C. Newman,
Nicole L. Bradick and Murray, Plumb & Murray were on brief for
appellee.

May 18, 2012

---

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**BOUDIN, <u>Circuit Judge</u>.**  Oxford Aviation ("Oxford") is a corporation that refurbishes and repairs aircraft in Oxford, Maine. In late 2006, Oxford contracted with Airlarr, a Pennsylvania corporation, for Oxford to perform various repairs and installations on Airlarr's airplane; the work was estimated to cost close to $70,000.  Airlarr picked up its airplane from Oxford's facility in January 2007 after Oxford finished its work, and flew it back to Pennsylvania.

In March 2010, Airlarr sued Oxford in Maine Superior Court for breach of contract, breach of express and implied warranties, and other state-law claims.  The complaint alleged that one of the plane's side windows cracked during the flight home due to Oxford's "negligence and faulty performance," and also listed in a separate paragraph a slew of "defects and other substandard work," including uncomfortable seats, leaking fuel injectors, a cracked turbocharger, and an improperly installed carpet.  The complaint included as an exhibit an estimate sheet representing the specific tasks undertaken by Oxford for Airlarr.

Oxford then notified Global Aerospace ("Global")--an insurance company that had issued Oxford a commercial general liability ("CGL") policy--that it had been sued, and requested that Global defend it.  Global disclaimed both coverage and any duty to defend; Oxford filed suit in state court in Maine requesting a declaratory judgment that Global was required to defend it in

-2-

Airlarr's suit. Oxford also alleged breach of contract and unfair claims settlement practices, Me. Rev. Stat. Ann. tit. 24-A, § 2436-A (2010).

Asserting diversity jurisdiction, Global removed the case to federal district court. 28 U.S.C. § 1332 (2006). Both parties filed summary judgment motions, Fed. R. Civ. P. 56, and the district court granted summary judgment in favor of Global. Oxford Aviation, Inc. v. Global Aerospace, Inc., 812 F. Supp. 2d 22 (D. Me. 2011). Without deciding whether the claims were within the general coverage provisions of the policy, the district court held that no duty to defend existed because Airlarr's claims fell within listed policy exclusions, most of which barred or limited insurance for damage relating to the insured's repairs and work.[1] Id. at 26-27.

Oxford appealed to this court. Our review of the district court's grant of summary judgment is de novo, and while factual inferences are drawn in favor of Oxford, Mandel v. Bos. Phoenix, Inc., 456 F.3d 198, 204-05 (1st Cir. 2006), the issues on which this case turns are legal rather than factual. The main issues--the scope of an insurer's duty to defend and the proper interpretation of the insurance contract--are both governed by Maine law. As various CGL policies issued by different insurers

---

[1]The coverage provisions at issue and the five separate exclusions relied upon by Global are discussed separately later in this decision and reprinted in the appendix to this opinion.

often employ standard language, precedent from other jurisdictions may be considered where Maine law is not definitive. Cf. Baywood Corp. v. Me. Bonding & Cas. Co., 628 A.2d 1029, 1031-32 (Me. 1993).

The insurer's duty to defend is ordinarily broader than its duty to indemnify. Penney v. Capitol City Transfer, Inc., 707 A.2d 387, 389 (Me. 1998). In Maine, the insurer must defend so long as the claims in the complaint create even a remote possibility of coverage. Me. Bonding & Cas. Co. v. Douglas Dynamics, Inc., 594 A.2d 1079, 1081 (Me. 1991). The complaint need only "disclose[] a potential for liability within the coverage and contain[] no allegation of facts which would necessarily exclude coverage." Travelers Indem. Co. v. Dingwell, 414 A.2d 220, 227 (Me. 1980). The duty to defend exists even if only one of the claims stated satisfies this test. Mitchell v. Allstate Ins. Co., 36 A.3d 876, 881 (Me. 2011).

Although the district court largely bypassed the issue of initial coverage and relied primarily on the exclusions, Oxford Aviation, 812 F. Supp. 2d at 26, Global argues on appeal that lack of coverage also negates any duty to defend. Coverage provisions broadly delineate the risk or risks insured against; the exclusions carve out exceptions that qualify coverage. Global is entitled to defend a judgment on any adequately preserved ground that supports that judgment even if the district judge ignored or rejected that ground. Haley v. City of Boston, 657 F.3d 39, 53 (1st Cir. 2011).

-4-

The policy at issue insured Oxford for liability based on claims arising between May 14, 2006, and May 14, 2007, and Oxford asserts coverage under two of the four coverage provisions. Coverage A, the principally relevant one of the two, applies to claims for "bodily injury or property damage . . . resulting from your aviation operations."  It applies only if the injury or damage "is caused by an occurrence and takes place in the coverage territory."  Property damage is defined to include "[p]hysical injury to tangible property, including all resulting loss of use of that property," and an "[o]ccurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[2]

Global argues that Coverage A does not apply because Airlarr's complaint cannot be read to allege "property damage" that is caused by an "occurrence."  Some courts have read the commonly used terms "property damage," "accident" or "occurrence" to exclude faulty workmanship by the insured entity, while others have looked instead to exclusions, common in CGL policies and present in Global's policy here, that are specifically directed to faulty workmanship.  Am. Home Assurance Co. v. AGM Marine Contractors,

---

[2]The other provision, Coverage D, applies to "loss to aircraft . . . occurring while such aircraft is in the care, custody or control of the insured for safekeeping, storage, service or repair."  Because Coverage A extends to some harms even after the aircraft has been restored to the owner, its coverage turns out to be more important in analyzing this case.

Inc., 467 F.3d 810, 812-13 (1st Cir. 2006) (describing case law); see also Sheehan Constr. Co. v. Cont'l Cas. Co., 935 N.E.2d 160, 167-69 (Ind. 2010). Neither party has cited a Maine case directly in point.

Perhaps common parlance might not describe an uncomfortable seat (one of the problems alleged by Airlarr) as an "accident," but a sudden unintended crack in a plane window fits comfortably within that term. In all events, Maine construes coverage terms like "accident" or "occurrence" generously, Me. Mut. Fire Ins. Co. v. Gervais, 715 A.2d 938, 941 (Me. 1998); Vigna v. Allstate Ins. Co., 686 A.2d 598, 600 (Me. 1996), in contrast to courts that rely on such terms to exclude coverage for faulty workmanship, e.g., Lyerla v. AMCO Ins. Co., 536 F.3d 684, 689 (7th Cir. 2008); Essex Ins. Co. v. Holder, 261 S.W.3d 456, 460 (Ark. 2008) (per curiam).

Thus, in Peerless Insurance Co. v. Brennon, 564 A.2d 383 (Me. 1989), builders sued for faulty construction asked the insurer to defend and it refused, saying there was no duty to defend because "the damages were not caused by an 'occurrence'" and also because certain exclusions applied. Id. at 384. In deciding whether or not a duty to defend existed, the Maine court focused its analysis exclusively on the applicability of the exclusions, and termed that "[t]he principal question" in the case. Id. at 385.

-6-

Further, the court quoted favorably from a dissent in a prior Maine case (whose majority decision Peerless overruled), suggesting that at least certain kinds of harm from faulty workmanship could come within the coverage of a CGL policy and even avoid its exclusions:

> If . . . a contractor performs unsatisfactory work, repair or replacement of the faulty work is a business expense for which insurance coverage is not provided. Conversely, if the faulty work causes an accident resulting in physical damage to others, coverage is afforded and the exception to exclusion (a) [liability assumed by the insured under a contract] preserves coverage even if the claim is based upon a quasi-contractual warranty theory.[3]

We conclude that at least the damage to the plane's side window is within this coverage provision of the policy, and if the duty to defend in this case is negated, this would have to be because of the exclusions.

In determining the duty to defend, the five exclusions invoked by Global must be read against the complaint's allegations of harm and asserted causes of action, and Global bears the burden of demonstrating their applicability. Patrons Oxford Ins. Co. v. Harris, 905 A.2d 819, 827 n.6 (Me. 2006). Much of the damage may have occurred during the period when Oxford had possession of the

---

[3]Peerless Ins. Co., 564 A.2d at 386 (emphases added) (quoting Baybutt Constr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 923 (Me. 1983) (Wathen, J., dissenting); accord Mass. Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 610 (Me. 1990).

plane and so be barred by exclusion (j)(4), which excludes from coverage "[p]roperty damage to . . . [p]ersonal property in the care, custody or control of the insured."[4]

But while uncomfortable seats and an improperly installed carpet almost surely had to occur while Oxford was in control of the plane, the in-flight crack in the window as alleged in the complaint just as surely falls outside that exclusion. And it is enough to preserve the duty to defend--so far as this exclusion is concerned--that the exclusion cannot apply to the cracked window since the crack occurred when Airlarr had reclaimed the plane. Thus, we need not tarry over other listed harms in Airlarr's complaint, such as the leaking fuel injectors or cracked turbocharger.[5]

We turn then to four exclusions that focus primarily on excluding or limiting insurer coverage for so-called "business risk"; these are included in CGL policies "for the express purpose of excluding coverage for risks relating to the repair or

---

[4]Oxford argues that Global has waived exclusion (j) because Global raised it for the first time in its cross-motion for summary judgment, and not as an affirmative defense in its answer or its denial of coverage letter to Oxford. We need not resolve this issue because the exclusion proves not to defeat the duty to defend.

[5]Whether the insurer can limit or escape its duty to defend once that duty arises (e.g., because the triggering claim disappears in mid-suit) is not an issue before us and we express no view on such matters beyond noting that Maine law does not appear friendly to such attempts. E.g., N. E. Ins. Co. v. Young, 26 A.3d 794, 799 (Me. 2011); Penney, 707 A.2d at 388-89.

replacement of the insured's faulty work or products, or defects in the insured's work or product itself."  Russ <u>et al.</u>, <u>Couch on Insurance 3d</u> § 129.16 (2005).  They reflect the CGL insurer's intention to leave such coverage to separate professional liability insurance, such as lawyers' malpractice coverage.  <u>See</u> <u>1325 N. Van Buren, LLC</u> v. <u>T-3 Grp., Ltd.</u>, 716 N.W.2d 822, 838-39 (Wis. 2006).

The four relevant exclusions, which are fully set forth in the appendix to this decision, may be (incompletely) summarized as follows.  The district court addressed only the last three.

> -<u>"Your work" (exclusion (j)(6))</u>:  "That particular part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it."
>
> -<u>"Your product" (exclusion (k))</u>: "Property damage to your product arising out of it or any part of it."
>
> -<u>"Products-completed operations hazard" (exclusion (l))</u>: "Property damage to your work arising out of it or any part of it and included in the products-completed operations hazard."
>
> -<u>"Impaired property" (exclusion (m))</u>: "Property damage to impaired property or property that has not been physically injured, arising out of:
> (1) A defect, deficiency, inadequacy or dangerous condition in your product or your work; or
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

The your-work exclusion listed first above fails to negate the duty to defend.  Conceivably, the cracked side window is

-9-

a "particular part" of property "on" which Oxford performed work. The estimate sheet indicates that Oxford was to "Proseal®" the windshield and windows of the airplane.[6] Cf. Gore Design Completions, Ltd. v. Hartford Fire Ins. Co., 538 F.3d 365 (5th Cir. 2008). But the your-work exclusion by its terms does not apply to "property damage occurring away from premises you own or rent and arising out of your product or your work," and Airlarr explicitly alleged that the crack occurred in-flight.

The your-product exclusion, listed second, similarly fails to negate the duty to defend. The district court properly said that this exclusion "applies to the alleged defects in the products that Oxford Aviation sold and installed in Airlarr's aircraft." Oxford Aviation, 812 F. Supp. 2d at 26. Neither the complaint nor the incorporated estimate sheet say that the side window was a product installed by Oxford; and Global has not suggested otherwise, beyond a half-hearted argument that "your product" should be read broadly in the context of the whole agreement.

_____

[6]"Proseal®" is the trademark of a company whose website proclaims that "Pro-Seal has developed over 180 exotic products to deal with water and fluid contaminant problems" and whose products include both sealants and films. See www.prosealproducts.com (last visited Apr. 25, 2012). The estimate sheet also lists as tasks to "Install Tinted window inserts," although the pricing is TBD, and to replace a pilot storm window (which no party has argued is the same as the side window).

The third-listed exclusion--for products-completed--applies to property damage (1) to your work, (2) that arises out of your work or any part of your work, and (3) that is included in the products-completed operations hazard, defined separately as "property damage occurring away from premises you own or rent and arising out of your product or your work."  The exclusion focuses on liability relating to completed operations or work, and like the other exclusions, aims to "discourage[] the performance of careless work" by the insured.  Russ et al. § 129.17.

However, the first condition of the exclusion is that the damage in question be "to your work" and the cracked window is not alleged to be, nor is there any indication that it was included in, Oxford's work.  True, the promise to "Proseal®" the window may imply application of a sealant around the window, or perhaps a film--Global is silent on the matter--but the complaint is not (or not only) seeking damages for injury to the film or sealant, but also or instead for the loss of the cracked window itself, which Oxford neither furnished nor installed.  Nor is there any indication that the Prosealing had anything to do with the crack.

If Oxford is at fault at all, conceivably (which is all that matters for the duty to defend) the crack's origin lay in Oxford's performance of heavy duty tasks listed in the estimate that could have weakened the window or frame leading to the in-flight crack.  Work on other parts of the plane can hardly convert

the entire plane into Oxford's "work" where the contract assigned only particular tasks, a view reinforced by construing any ambiguities in the scope of the term "your work" against the insurer.  York Ins. Grp. of Me. v. Van Hall, 704 A.2d 366, 369 (Me. 1997).[7]

The final exclusion, sometimes known as the "impaired property" exclusion, has as its subject (1) property that has not been physically injured and (2) property that is latently impaired because, as the "impaired property" definition indicates, it incorporates defective work or a defective product of the insured (e.g., a defective part was installed in the engine) or the contract was not performed (e.g., the insured failed to inspect one of the engines).[8]

---

[7]So, too, does case law reject such a reading.  E.g., Hartford Casualty Co. v. Cruse, 938 F.2d 601 (5th Cir. 1991); Todd Shipyards Corp. v. Turbine Servs., Inc., 674 F.2d 401 (5th Cir.), cert. denied, 459 U.S. 1036 (1982); Auto-Owners Ins. v. Home Pride Cos., 684 N.W.2d 571, 579 (Neb. 2004).

[8]The impaired property definition reads:
Impaired property means tangible property, other than your product or your work, that cannot be used or is less useful because:
    (a) It incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or
    (b) You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
    (c) The repair, replacement, adjustment or removal of your product or your work; or
    (d) Your fulfilling the terms of the contract or agreement.

The exclusion aims "in essence to preclude coverage for loss of use claims arising from faulty work or products when there is no physical injury to the property."  Russ et al. § 129.21 (emphasis supplied); see also Corn Plus Co-op v. Cont'l Cas. Co., 516 F.3d 674, 679 (8th Cir. 2008); Transcon. Ins. Co. v. Ice Sys. of Am., Inc., 847 F. Supp. 947, 950 (M.D. Fla. 1994).  Without the exclusion, the insurer might become liable for loss of use of the plane resulting from faulty maintenance, for the policy elsewhere defines "property damage" to include "all resulting loss of use."

In such instances, the origin of the harm is defective performance by the insured and the impact is usually only upon the insured and its client, so the CGL insurer generally treats this loss of use as a matter for professional liability coverage rather than general liability coverage.  The tenor is very much that of the your-work, your-product, and products-completed exclusions. While the exclusion could bar a loss of use claim resulting from the damaged window, it does not bar a claim for the loss of the window itself and so does not negate the duty to defend with respect to the cracked window.

This is a curious case.  Reading the complaint against the exclusions, one must agree with the district judge that the underlying liability is only to Airlarr; that the alleged property damage to Airlarr, if proved as charged, likely traces back to defective work by Oxford; and that such damage to the insured's

-13-

client resulting from such a cause is what the business-risk exclusions taken together hope to cabin, limit and usually preclude.

But for obvious reasons (e.g., to cover consequential damages claimed by third parties), the CGL policy does not have an exclusion broadly written to exclude all claims arising from faulty workmanship. Rather, Global has crafted complex exclusions occupying several pages of text; and they have created an opportunity in some cases for a complaint to circumvent all of them. Here, at least one scenario relating to the cracked window, occurring in flight and away from Oxford's facilities, does fall within coverage and could plausibly avoid all cited exclusions.

If Airlarr proves its case, it seems unlikely that there will be much, if any, indemnification since most of the claimed injuries appear likely to be covered by exclusions. But the duty to defend is triggered by any realistic possibility of any damage that might be within coverage and outside the exclusions and the damaged window creates that prospect. This alone answers Oxford's request that we certify questions in this case to the Maine SJC in light of a recent decision there, Mitchell v. Allstate Ins. Co., 36 A.3d 876, 881 (Me. 2011).

As for Oxford's request for attorney's fees on the ground that Global "lacked a good faith basis" in refusing to defend Oxford and unduly delayed providing a defense, we deny the request.

-14-

The potential for coverage here is a close call: it focuses on one claim and a close parsing to preserve the possibility of liability. Concerning the alleged delay, Oxford's initial request was sent to the wrong address and Global responded promptly once it received the demand.

The decision of the district court so far as it rejected a duty to defend is <u>vacated</u> and the matter is <u>remanded</u> for entry of a judgment consistent with this decision. The motion to certify a state law question is <u>denied</u>. Each side shall bear its own costs on this appeal.

<u>It is so ordered</u>.

Coverage A

COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement.
(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies resulting from your aviation operations.  We will have the right and duty to defend any suit seeking those damages.  We may at our discretion investigate any occurrence and settle any claim or suit that may result. . . .
(b) This insurance applies to bodily injury and property damage only if:

> (1) The bodily injury or property damage is caused by an occurrence and takes place in the coverage territory, and
> (2) The bodily injury or property damage occurs during the policy period. . . .

2.  Exclusions.
This insurance does not apply to:
. . .
(j) Property damage to:

> . . .
> (4) Personal property in the care, custody or control of the insured . . . or
> (6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it. . . .

Paragraph (j)(6) of exclusion (j) does not apply to property damage included in the products-completed operations hazard.
(k) Property damage to your product arising out of it or any part of it.
(l) Property damage to your work arising out of it or any part of it and included in the products-completed operations hazard.
This exclusion (l) does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
(m) Property damage to impaired property or property that has not been physically injured, arising out of:

> (1) A defect, deficiency, inadequacy or dangerous condition in your product or your work; or
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion (m) does not apply to the loss of use of other property arising out of sudden accidental physical injury to your product or your work after it has been put to its intended use.

. . .

COVERAGE D - HANGARKEEPERS' LIABILITY
1. Insuring Agreement.
(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to aircraft . . . occurring while such aircraft is in the care, custody or control of the insured for safekeeping, storage, service or repair.  We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any loss and settle any claim or suit that may result. . . .
(b) This insurance applies to damages because of loss to aircraft only if:
         (1) The loss takes place in the coverage territory; and
         (2) The loss occurs during the policy period.
2. Exclusions.
This insurance does not apply to:
. . .
(e) Loss to your work arising out of it or any part of it.
(f) Loss to aircraft while in flight.

. . .

SECTION V - DEFINITIONS

. . .

<u>Impaired property</u> means tangible property, other than your product or your work, that cannot be used or is less useful because:
         (a) It incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or
         (b) You have failed to fulfill the terms of a contract or agreement;
         if such property can be restored to use by:
         (c) The repair, replacement, adjustment or removal of your product or your work; or
         (d) Your fulfilling the terms of the contract or agreement.
. . .
<u>Loss</u> means an accident resulting in direct damage to tangible property, including continuous or repeated exposure to substantially the same general harmful conditions.  <u>Loss</u> includes any resulting loss of use.
. . .
<u>Occurrence</u> means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
. . .

Products-completed operations hazard includes all bodily injury and property damage occurring away from the premises you own or rent and arising out of your product or your work except:

> (1) Products that are still in your physical possession; or
> (2) Work that has not yet been completed or abandoned.

Your work will be deemed completed at the earliest of the following times:

> (1) When all of the work called for in your contract has been completed.
> (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
> (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include bodily injury or property damage arising out of:

> (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;
> (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

[]Property damage means:

(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

(b) Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

. . .

Your product means:

(a) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

> (1) You . . . and

(b) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Your product includes:

(c) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

(d) The providing of or failure to provide warnings or instructions.

. . .

<u>Your work</u> means:

(a) Work or operations performed by you or on your behalf; and

(b) Materials, parts or equipment furnished in connection with such work or operations.

<u>Your work</u> includes:

(c) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and

(d) The providing of or failure to provide warnings or instructions.