STATE OF MAINE                              BUSINESS & CONSUMER DOCKET

CUMBERLAND, ss.                         DOCKET NO. BCD-CV-19-05

| | | |
|---|---|---|
| HANCOCK COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION TO DISMISS |
| HANCOCK WIND, LLC, | ) | COUNTERCLAIM |
| | ) | |
| Defendant. | ) | |

In this case regarding a wind energy project in Hancock County, Maine, Plaintiff Hancock County (the "County") has moved to dismiss the Counterclaim filed by Defendant Hancock Wind, LLC ("Hancock Wind" or the "Company"). The Court heard oral argument on the motion on Friday, April 5. The County appeared through attorney Edmond Bearor, Esq. and Dan Mitchell, Esq. appeared for Hancock Wind. For the reasons stated, the Court grants the County's motion.

BACKGROUND

On September 12, 2014, Hancock Wind entered into a Community Benefit Agreement ("CBA") with Hancock County whereby Hancock Wind would make annual payments to the County, calculated as a function of $3,703 times the "rating generating capacity" of a multi-turbine wind energy project (the "Project") that Hancock Wind would construct in the County. (Pl's Compl. ¶¶ 7, 12.) Hancock Wind made the first payment by check on November 30, 2016. (Pl's Compl. ¶ 15.) Shortly after the County received the check, however, Hancock Wind said that it had overpaid and asked for $18,885.30 back. (Pl's Compl. ¶ 16.) The County beleived that the original amount was the correct amount and declined to refund Hancock Wind. (Pl's Compl. ¶ 18.) On December 1, 2017, Hancock Wind made its second annual payment, but deducted $37,770.60

1

from what the County expected to receive: minus $18,885.30 because of the previous year's purported overpayment, and minus an additional $18,885.30 for that year's payment based on what Hancock Wind believed to be the correct amount due. (Pl's Compl. ¶¶ 20-24.) Hancock County filed suit against Hancock Wind on November 14, 2018, requesting a declaratory judgment on the proper construction of the CBA and alleging breach of contract based on Hancock Wind's purported underpayment under the CBA. (Pl's Compl. ¶¶ 26-31.) The dispute, as alleged, is based on whether the Project's "rating generating capacity" is 56.1 megawatts ("MW") or 51 MW: the Project's seventeen wind turbines have a "rated capacity" of 3.3 MW each, but the turbines are "converter-limited" to 3.0 MW. (Pl's Compl. ¶ 17.)

Hancock Wind answered and counterclaimed, pleading one count of "indemnification" based on the CBA. (Def's Countercl. ¶¶ 1-7.) Hancock Wind alleges that pursuant to section 11 of the CBA, the County must indemnify Hancock Wind for any legal expenses it incurs in its defense of the County's Complaint and prosecution of its own Counterclaim. (Def's Countercl. ¶ 7.) Section 11 (the "Indemnification Provision") of the CBA (Pl.'s Compl., Ex. A, hereafter "CBA") provides as follows:[1]

> 11. <u>Indemnification</u>. As a further condition of the Agreement, the County agrees to indemnify the Company for any legal expenses incurred by the Company as a result of legal challenges by any person other than the Company or the Company's successors or assigns to the validity or administration of this Agreement.

Hancock County responded with the motion to dismiss counterclaim now before the Court.

---

[1] A copy of the CBA was attached to the County's Complaint and the Company's Counterclaim. The Court may thus consider the CBA without converting the instant motion to one for summary judgment. M.R. Civ. P. 10(c); *see also Moody v. State Liq. & Lott. Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43.

DISCUSSION

Hancock County argues that its Complaint is not a legal challenge to the "validity or administration" of the CBA and that the Indemnification Provision does not specifically reference direct claims between the parties and therefore does not encompass the County's lawsuit. Hancock Wind responds that the Complaint is a challenge to the "administration" of the CBA and, moreover, the broad language of the Indemnification Provision obligates Hancock County to indemnify Hancock Wind for its legal expenses, even for the County's own lawsuit against Hancock Wind. The Court considers each argument in turn.

I.      Hancock County's Lawsuit is Not a Challenge to the Administration of the CBA.

The County first argues that in the context of the CBA, its lawsuit is not a challenge to the "administration" of the agreement as that term is used in the Indemnification Provision. Hancock Wind responds that the "administration" of the CBA includes Hancock Wind's calculation and payment of annual contributions under any reasonable interpretation of the word. Neither party argues that the term is ambiguous, their disagreement is merely over the breadth of the term in the context of this agreement. *See Champagne v. Victory Homes, Inc.*, 2006 ME 58, ¶ 10, 897 A.2d 803 ("The fact that parties have different views of what an agreement means does not render it ambiguous.").

"A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *Eastwick v. Cate St. Capital, Inc.*, 2017 ME 206, ¶ 16, 171 A.3d 1152 (quotation omitted). "In construing a contract, an interpretation should be avoided that would render meaningless any particular provision in the contract." *Top of the Track Assocs. v. Lewiston Raceways*, 654 A.2d 1293, 1296 (Me. 1995) (citation omitted); *see also Acadia Ins. Co.*

*v. Buck Constr. Co.*, 2000 ME 154, ¶ 9, 756 A.2d 515 ("a contract [should generally] be construed to give force and effect to all of its provisions."); *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 385 (Me. 1989) (contracts "construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how far one clause is explained, modified, limited or controlled by the others.") (quoting *Swift v. Patrons Androscoggin Mutual Fire Ins. Co.*, 125 Me. 255, 256, 132 A. 745, 746 (1926)).

The County points out that the second "Whereas Clause" under the Recitals heading of the CBA explicitly references 35-A M.R.S. § 3451-3459 (the "Statute"). The clause recognizes that approval of the expedited wind energy development permit for the Project requires that the Project provide significant tangible benefits to the area in which the Project is located in the form of a CBA. *See id.* §§ 3451(1-C), 3454(2). Pursuant to the Statute, the CBA "involves payments by the developer to the host community to be utilized for public purposes, including, but not limited to, for property tax reductions, economic development projects, land and natural resource conservation, tourism promotion or reduction of energy costs. . . ." *Id.* § 3451(1-B); *see also id.* § 3454(4). The annual contributions at the center of this dispute are the tangible benefits described in the Statute. (CBA § 2(a).) Pursuant to the seventh Whereas Clause, the parties "agree and acknowledge that the [payments provided pursuant to the CBA] shall not influence or have any bearing whatsoever on the County's review of any application of the Company for any [p]ermit or any other decision the County may have occasion to make relative to the project." Section 2 of the CBA further explicitly contemplates third-party litigation challenging the County's use of CBA payments. (CBA § 2(b).)

4

Taken as a whole, the CBA contextualizes what the parties intended when Hancock County agreed to indemnify Hancock Wind for any "legal challenges . . . to the validity or administration of" the CBA. (CBA § 11.) The CBA does not contemplate "legal challenges" between the parties to the proper calculation of Hancock Wind's annual contributions to the County, but it does explicitly contemplate third party challenges to the administration and use of those payments. The use of these payments is also a central concern of the Statute, which is explicitly and implicitly referenced throughout the CBA. The Court therefore concludes that "administration" as that term is used in the Indemnification Provision unambiguously refers to the County's use of Hancock Wind's payments to the County. Read in its entirety, the CBA does not support a broader construction of the term.

Hancock Wind argues that the County's construction of the provision reads out the language "of this Agreement" and reads in the language "under the Statute," and therefore relies on material beyond the four corners of the CBA. Hancock Wind further argues that the County's attempt to limit the broad scope of the language of the Indemnification Provision is unsupported by the unambiguous, plain language of the provision, which provides that the County will indemnify Hancock Wind for legal expenses incurred as a result of lawsuits challenging the "administration of this Agreement[,]" with no other qualifiers. The problem with Hancock Wind's first argument is that the CBA explicitly and implicitly references the Statute. (CBA, Second Whereas Clause; § 2(a) (quoting the Statute verbatim).). Hancock Wind's second argument focuses too narrowly on the Indemnification Provision in isolation, without consideration of the entire agreement as a whole. Here, the term "administration" is rendered unambiguous and narrowed in scope when considered in tandem with the CBA's other provisions. *See Peerless Ins. Co.*, 564 A.2d at 385; *Farrand v. Redington Mem'l Home*, 270 A.2d 871, 875 (Me. 1970).

II.     The Indemnification Provision Does Not Apply to the County's Lawsuit.

The County next argues that the Indemnification Provision applies only to third-party claims, and not direct claims brought by the County, because it is broadly worded and does not specifically provide for indemnification in the case of direct claims brought by Hancock County. Hancock Wind responds that the County's lawsuit is clearly within the scope of the plain language of the Indemnification Provision, and that nothing more specific is required.

Assuming arguendo that the County's lawsuit is a challenge to the "administration" of the CBA, the Indemnification Provision nonetheless lacks the specificity and explicitness required under Maine law. "An indemnification claim based on contract must rest on a clear, express, specific, and explicit contractual provision, under which the party against which a claim is to be asserted has agreed to assume the duty to indemnify." *Devine v. Roche Biomedical Labs.*, 637 A.2d 441, 446 (Me. 1994); *see also Patco Constr. Co. v. Peoples United Bank*, No. 09-503-P-H, 2010 U.S. Dist. LEXIS 136748 (D. Me. March 31, 2010) ("for a contractual indemnification provision to apply to claims between the parties to the contract, rather than to third parties' claims, it must be stated clearly and unambiguously") (applying Maine and Connecticut law).

Hancock Wind's main argument is that the Indemnification Provision is clear and unambiguous, albeit broad, and that its generality does not remove the County's lawsuit from its scope. Under *Devine*, however, an indemnification claim based on contract must rest on a *specific* and *explicit* contractual provision, not merely a clear and express one. In other words, the parties did not state their intention for the Indemnification Provision to apply to the County's own claims against Hancock Wind specifically and explicitly. Therefore, under *Devine*, the Indemnification Provision cannot support an indemnification claim by Hancock Wind against Hancock County for the County's own lawsuit against the Company. 637 A.2d at 446.

6

Finally, the Court is persuaded by a hypothetical raised by Hancock County at the oral argument. Hancock County pointed out that under Hancock Wind's construction of the Indemnification Provision, Hancock Wind could blatantly breach the CBA by simply withholding the entirety of each annual payment, and the County would be required to finance Hancock Wind's defense of the County's ensuing action for breach of contract. Litigation costs could easily outpace the County's potential recovery. The Indemnification Provision as construed by Hancock Wind would thus result, practically, in an absurd result.[2]

Generally, "[a]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect" and "a contract construction which produces an unreasonable result should be avoided." *Moody v. Me. State Lottery*, No. CV-02-540, 2003 Me. Super. LEXIS 153, *5 (June 12, 2003) (quoting Restatement (Second) of Contracts § 203(a) (1981)) (citing *Nassau Chap., Civ. Svc. v. Nassau Cty.*, 430 N.Y.S.2d 98, 100), *aff'd*, 2004 ME 20, 843 A.2d 43. The Court thus concludes that, as written, no reasonable interpretation of the Indemnification Provision could result in a construction where the County is required to indemnify Hancock Wind for its litigation costs in a case brought by the County against Hancock Wind to enforce the Company's payment obligations under the CBA.

## CONCLUSION

For all the foregoing reasons, Hancock County's motion to dismiss counterclaim is granted.

---

[2] At oral argument, both parties rejected the Court's query as to whether a "prevailing party" condition could be read into the Indemnification Provision in the case of direct claims on the grounds that there is nothing in the CBA or the Indemnification Provision to support the insertion of such a term.

7

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.


Dated: April 17, 2019                    ___/s_____
                                         Michael A. Duddy
                                         Judge, Business and Consumer Docket