STATE OF MAINE                           BUSINESS AND CONSUMER COURT ✓

Cumberland, ss.

DAVID B. GRAVISON and
BEVERLY A. GRAVISON

                    Plaintiffs

            v.                                    Docket No. BCD-CV-14-04

FIRST AMERICAN TITLE INSURANCE COMPANY

                    Defendant

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Motion for Summary Judgment filed in this case by Defendant First American Title Insurance Company ["First American"] came before the court for oral argument August 7, 2014, with attorney Dinan representing First American and attorney Joyce representing Plaintiffs David and Beverly Gravison ["the Gravisons"].

### *Background*

The Gravisons purchased oceanside property located at 15 Osprey Lane, Owls Head, in December 2006, and at the time of the purchase were issued an owner's title insurance policy with First American, Policy No. 370002883-MEOe ["the Policy"], a copy of which policy was attached to the complaint as Exhibit A.

The land insured by the Policy is described in Exhibit A to Schedule A of the policy as including certain "rights of way over lands formerly of Spaulding and Perry; and also to the roads and paths as laid out in prior plans of that property conveyed by John C. Farber to Alice S. Farber dated September 12, 1936 ... and ... specifically those plans prepared by Blackinton (1882), Tripp Engineering Co. (1934), and Frederick E. Beal (1992), SUBJECT to the rights of

1

others to use those roadways and paths." Defendant's Statement of Material Facts (Def's SOMF) ¶ 8.)

Schedule B of the Policy enumerates several pertinent areas for which there is no coverage under the Policy, as follows:

> "This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of the following:
>
> 1. Any facts, rights, interest, or claims which are not shown by the public records, but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
>
> 2. Discrepancies, conflicts and boundary lines, shortages in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
>
> . . .
>
> 8. Subject to the rights of others to use the beach for recreational purposes and to use the roadways and paths as laid out on plans of the property described in warranty deed from John C. Farber to Alice S. Farber dated September 12, 1936 and recorded in the Knox County Registry of Deeds in Box 287, Page 308; specifically those plans prepared by Blackinton (1882), Tripp Engineering Co. (1934), and Frederick E. Beal (1992).
>
> 9. Subject to the right to use the beach abutting the subject premises for boating and bathing purposes for the benefit of property described as Lot No. 3 on Plan of Cooper's Beach as laid out on June, 1882 and as described in Deed of Distribution from Robert Morrell Coon, Jr. and Alfred T. Matthews, Personal Representatives of the Estate of Charles W. Farber, to Nancy Ellen Wolff Bolan dated March 18, 1998 and recorded in Knox County Registry of Deeds in Book 2212, Page 191.
>
> . . .
>
> 11. Rights of the United States of America, the State of Maine, and the public generally in and to that portion of the property line below the mean high water mark of West Penobscot Bay.
>
> 12. Title to that portion of the premises lying below the mean high water mark of West Penobscot Bay."

Def's SOMF ¶ 9.

The Policy's Conditions and Stipulations include, at Section 4 under the heading DEFENSE AND PROSECUTION OF ACTIONS, the following provisions:

(a) Upon written request by the insured . . ., the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. . . The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy."

Complaint Exhibit A, page 2 of 4.

In December 2011, the Gravisons filed suit against the record owners of several neighboring or abutting properties ["the Neighbors"] in the Knox County Superior Court. *See* Complaint, *Gravison v. Fisher*, Super. Ct., Kno. Cty. Docket No. ROCSC-RE-11-51 [Def. Ex. 11]. The Gravisons' Knox County suit seeks a declaratory judgment to the effect that the Neighbors "have no right to use or go onto any portion of the Gravisons' property or beach. *See Gravison v. Fisher* Complaint at 13.

In response, the Neighbors filed a seven-count counterclaim, asserting rights of use and passage over the Gravison property, by virtue of deeds and by virtue of prescriptive rights, public and private, as well as rights of ownership and use in the intertidal zone adjacent to the upland portions of the Gravison property. *See Gravison v. Fisher* Counterclaim (April 3, 2012).

The Gravisons requested First American to defend or at least pay to defend against the Neighbors' counterclaim, and First American has declined to do either. The Gravisons commenced this action with an eight-count complaint, seeking in Count I a declaratory judgment that First American is required to defend and indemnify them against the Neighbors' counterclaim, and seeking in the remaining counts other forms of legal and equitable relief in response to First American's refusal to take up the defense.

3

*Analysis*

First American's motion seeks summary judgment on the first five counts of the Complaint—those relating to First American's alleged duty to defend the Gravisons against the Neighbors' counterclaims—on the following grounds:

- the Policy at Section 4 of the Conditions and Stipulations does not require First American to defend or indemnify the Gravisons against "matters not insured against by this policy."

- the Neighbors' counterclaims, whether or not valid, all relate to "matters not insured against," given that the Policy excludes claims under the deeds that the Neighbors' deeded easement claims rest on; excludes the Neighbors' claims for prescriptive easement by virtue of the "persons in possession" exclusion at Schedule B, paragraph 1, and excludes any claims relating to the intertidal zone.

As the party seeking summary judgment, First American has to show that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. *See* M.R. Civ. P. 56.

At oral argument, the Gravisons conceded—as they had to do, in the court's view—that certain of the counts of the Neighbors' counterclaim fall within the Policy exclusions regarding deeded rights and the intertidal zone, and thus that First American has no duty to defend against the claims asserted in those counts. However, the Gravisons maintain, and for the reasons set forth below, the court agrees, that under Maine law, First American does have a duty to defend against the Neighbors' counterclaims that are based on prescriptive or implied easement theories.

The counts of the Neighbors' counterclaims as to which First American has no duty to defend are Count I, in which the Neighbors claim deeded appurtenant rights under plans and deeds that are excluded in Schedule B, and Counts V and VII, which claim rights in the intertidal zone—likewise excluded in Schedule B.

4

Thus, the focus of the remainder of this Order will be on the remaining counts of the Neighbors' counterclaim: Count II, for prescriptive easement appurtenant; Count III, alleging public prescriptive rights; Count IV, alleging prescriptive easement in gross; and Count VI, alleging that Nancy Bolan has an implied easement appurtenant to her quasi-easement in the intertidal zone to cross the upland portion of the Gravison property.

First American's argument is that it has no duty to defend because all of the claims reflected in these four counts arise under plans and deeds excluded in Schedule B and/or "could be ascertained by an inspection of said land or by making inquiring of persons in possession thereof" for purposes of paragraph 1 of Schedule B. Paragraph 1 also referred to as the "persons in possession" exclusion.

However, First American forthrightly acknowledges that Law Court precedent cuts against its position. Specifically, it notes that the Law Court has indicated that a title insurer's duty to defend is to be determined in the same way as a general liability insurer's duty to defend. Defendant's Motion for Summary Judgment with Incorporated Memorandum at 3-4.

In *N.E. Properties, Inc. v. Chicago Title Ins. Co.*, the Law Court indicated that Chicago Title's "duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy. The insured is entitled to a defense if there exists any legal or factual basis which could be developed at trial which would obligate the insurer☐ to pay under the policy." 660 A.2d 926, 927 (Me. 1995) (internal citations and quotation marks omitted), *citing Baywood Corp. v. Maine Bonding & Casualty*, 628 A.2d 1029 (Me. 1993).

With supporting authority from other jurisdictions, First American says that the *N.E. Properties* decision is wrong in conflating the scope of a liability insurer's duty to defend with that of a title insurer. Indeed, there is a fundamental difference between title insurance and liability insurance:

5

'A title insurance policy is not an agreement to guarantee or a warranty of the state of the title …. It is, rather, an agreement to indemnify the policyholder … against loss through defects in title.' Before issuing a policy, a title insurer searches real property records for title defects and, if any are discovered, excludes such known defects from the policy coverage. In so doing, the title insurer discloses such defects to the potential purchaser of the policy, thus affording an opportunity to cure any title defects before the real estate transaction closes.

…

[T]itle insurance is fundamentally different from general liability insurance. 'Unlike other forms of insurance, title insurance is not directed at future risks. It is directed at risks that are already in existence on the date the policy is issued.' Because title insurance narrowly covers defects in, or encumbrances on, titles that are in existence when the policy issues, title insurers attempt to eliminate or reduce risks prior to the issuance of a title insurance policy. Such differences are reflected in the differing payment schemes and length of coverage as between title and general liability insurance: title insurance typically requires a single premium payment (often a percentage of property value) for indefinite coverage, whereas general liability insurance requires continuation premiums (based on the likelihood a future event will occur) for coverage during a set term.

*GMAC Mortgage, LLC v. First American Title Insurance Co.*, 464 Mass. 733, 739-740, 985 N.E.2d 823, 828-29 (2013) (internal citations omitted). *See also Carstensen v. Chrisland Corp.*, 247 Va. 433, 442, 442 S.E.2d 660, 665 (1994).

On the strength of the distinction between liability insurance and title insurance, the Supreme Judicial Court of Massachusetts has gone on to conclude that a title insurer's duty to defend is much narrower than a liability insurer's duty to defend:

"[T]he broadly applied standard for determining whether a general liability insurer has a duty to defend is inapplicable in the context of title insurance. More precisely, a title insurer does not have a duty to defend simply because the allegations in the underlying complaint are "reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms.' Application of this standard threatens to sweep a whole host of uncontemplated risks into the ambit of title insurance. To avoid such an aberration, we conclude that a title insurer's duty to defend is triggered only where the policy specifically envisions the type of loss alleged." *Deutsche Bank National Association v. First American Title Insurance Co.*, 465 Mass. 741, 746-747, 991 N.E. 2d 638, 643 (2013) (internal citations omitted).

Implicit in this standard is the premise that a title insurer's risk is limited to actual defects in title, meaning that the duty to defend is limited to claims arising out of an actual defect in title—valid claims only. Based on that premise, First American

argues that it matters not whether the Neighbors' prescriptive easement claims are valid or not—either way there is no duty to defend.

If the Neighbors' prescriptive easement claims are valid, according to First American, it can only be because they are based on "facts, rights, interest, or claims which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof," all of which fall within the "persons in possession" exclusion. On the other hand, if the Neighbors' prescriptive easement claims are not valid, then there is no covered defect in title and, again, no duty to defend, according to First American.

For two reasons, this court denies First American's motion for summary judgment with respect to its duty to defend the Gravisons against the Neighbors' counterclaims.

The first and more obvious reason is that it is this court's duty to follow Law Court precedent, unless there has been such passage of time and such change of circumstances as to inspire confidence that the Law Court would not follow its own precedent. This court is not confident that such is the case, and therefore will follow *N.E. Properties, Inc.*

The second reason relates to a practical problem with First American's argument and the *Deutsche Bank* standard on which it relies. Under *Deutsche Bank*, First American's duty to defend is limited to risks specifically envision[ed]", i.e. actually insured, by the Policy, meaning that First American's duty to defend prescriptive easement claims is limited to valid claims that in fact could not have been discovered through inspection or inquiry under the "persons in possession" exclusion.

As applied to the "persons in possession" exclusion, the essential difference between the *N.E. Properties, Inc.* standard and the *Deutsche Bank* standard is that the

7

*N.E. Properties, Inc.* test imposes a duty to defend if there is any set of facts upon which the Neighbors might prevail and trigger First American's duty to pay, whereas the *Deutsche Bank* test imposes a duty to defend if the set of facts upon which the Neighbors do in fact base their claims is sufficient to establish a valid claim.

This means that, under the *Deutsche Bank* standard, to determine whether First American has a duty to defend against the Neighbors' prescriptive and implied easement claims, it would be necessary to determine whether the Neighbors' evidence is sufficient to prove their claim. That determination would call, at a minimum, for a "case within a case" trial of the merits of the Neighbors' claims. But even a "case within a case" trial likely would not be adequate, because it is the Neighbors' own evidence—not the evidence that the Gravisons and First American would present in the "case within a case"—that would determine whether the Neighbors' claim is valid and therefore within First American's duty to defend.

Thus, under the *Deutsche Bank* test, it is only after the Neighbors have prevailed on their counterclaims that it can be determined whether First American has a duty to defend those counterclaims—an absurd result. Whatever its merits in theory, the *Deutsche Bank* standard for determining the duty to defend fails the test of practicality.

Under the *N.E. Properties, Inc.* standard, First American has a duty to defend if there is a "legal or factual basis which could be developed at trial which would obligate [First American] to pay under the policy." This court can readily envision scenarios under which the Neighbors could prove their prescriptive easement claims (and Nancy Bolan's implied easement claim) on a factual basis that might not have been discoverable through inspection of the property or through inquiry of persons in possession. Not every valid prescriptive easement claim leaves visible traces on the property over which

8

the claim is made. Not every property owner is necessarily aware of the uses that neighbors make of the property—actual knowledge of use is not required; imputed knowledge of a use may be sufficient in some instances. In other words, First American's premise that each and every valid prescriptive easement claim can be discovered through inspection and/or through inquiry of "persons in possession" is not necessarily true universally.

In this case, the Gravisons say they did inspect the property and saw nothing to indicate the Neighbors' claims. What the Gravison's predecessors might have told them if the Gravisons had made specific inquiry is not clear. Therefore, under the *N.E. Properties, Inc.* test, there are scenarios under which First American would have a duty to pay, and First American has a duty to defend against the Neighbors' claims.

For that reason, this Order will grant partial summary judgment to the Gravisons on Count I of their complaint in this case, to the extent of a declaratory judgment that First American has a duty to defend the Neighbors' counterclaim as to Count II, for prescriptive easement appurtenant; Count III, alleging public prescriptive rights; Count IV, alleging prescriptive easement in gross; and Count VI, alleging that Nancy Bolan has an implied easement on the upland portion of the Gravison property based on a quasi-easement. *See* M.R. Civ. P. 56(c) (where appropriate, summary judgment may be rendered against the moving party).

First American's motion will be granted and First American will be granted partial summary judgment on Count I of the Gravisons' complaint as to the remaining counts of the Neighbors' counterclaim.

Because First American's motion for summary judgment was granted in part and denied in part, this Order addresses only the Gravisons' declaratory judgment claim in Count I and

9

leaves the remaining counts covered by First American's motion—Counts II through V of the Gravisons' complaint—unresolved. First American's motion for summary judgment did not extend to Counts VI through VIII of the Gravisons' complaint.

First American has requested, in the event its motion were not granted, the opportunity to take discovery regarding the Gravisons' defense and costs of defense against the counterclaim, and this seems appropriate. First American has no duty to prosecute or contribute to the cost of prosecuting the Gravisons' action against the Neighbors, at least to the extent that it relates to the use of the beach. As to the upland portion of the Gravison property—the area over which the Neighbors claim prescriptive rights—the distinction between the cost of maintaining the action and the cost of defending against the counterclaims may be more elusive, as may be separating the costs of defending certain counts of the counterclaim from the costs of defending other counts.

Discovery and other matters relating to the future phases of this case can be discussed at the next conference of counsel.

*Conclusion*

IT IS HEREBY ORDERED AS FOLLOWS:

1. Defendant First American Title Insurance Company's Motion for Summary Judgment is hereby granted in part, as follows: First American is hereby awarded partial summary judgment on Count I of the complaint. It is hereby declared and adjudged that First American has no duty under Policy No. 370002883-MEOe to defend Plaintiffs David and Beverly Gravison against the claims asserted in Counts I, V and VII of the Defendants' counterclaim dated April 3, 2012 in *Gravison v. Fisher*, Super. Ct., Kno. Cty. Docket No. ROCSC-RE-11-51 [Def. Ex. 11].

2. Defendant First American Title Insurance Company's Motion for Summary Judgment is otherwise denied.

3. Pursuant to M.R. Civ. P. 56(c), Plaintiffs David and Beverly Gravison are hereby awarded partial summary judgment on Count I of the complaint, as follows: It is hereby declared and adjudged that First American has a duty under Policy No. 370002883-MEOe to defend Plaintiffs David and Beverly Gravison against the claims asserted in Counts II, III, IV and VI of the Defendants' counterclaim dated April 3, 2012 in *Gravison v. Fisher*, Super. Ct., Kno. Cty. Docket No. ROCSC-RE-11-51 [Def. Ex. 11].

4. The clerk will schedule a conference of counsel to discuss further proceedings in this case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated September 15, 2014

A.M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 9-15-14
Copies sent via Mail ___ Electronically ✓

11

**David B. Gravison and Beverly A. Gravison v. First American Title Insurance Company**
**BCD-CV-14-04**


**David B. Gravison and Beverly A. Gravison**
    **Petitioner / Plaintiff**

    Counsel:                Sean Joyce, Esq.
                              75 Pearl St., Suite 204
                              Portland, Me 04112-0048


**First American Title Insurance Company**
    **Respondent / Defendant**

    Counsel:                Christopher Dinan, Esq.
                              95 Exchange St
                              PO Box 7046
                              Portland, ME 04112-7046